**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Anthony Cingrani, Jr., | ) | |
| Plaintiff, | ) | |
| v. | ) | 15 cv _____ |
| | ) | |
| Sheet Metal Workers' Local No. 73 Pension Fund, | ) | |
| | ) | Judge _____ |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Anthony Cingrani, Jr. ("Cingrani"), for his complaint against the Sheet

Metal Workers' Local No. 73 Pension Fund ("the Fund"), states:

## COUNT I

### Nature of the Claim, Jurisdiction and Venue:

1.      This is a complaint against the Fund for violation of the Employee Retirement

Income Security Act, 29 U.S.C. § 1132 (a)(1)(B), because of its wrongful denial of Cingrani's

application for a full pension. Jurisdiction of the Court is invoked under 29 U.S.C. § 1132 *et seq.*

("ERISA") and 42 U.S.C. § 1331. Venue exists in the Northern District of Illinois because the

Fund resides in the Northern District of Illinois.

2.      Cingrani is a resident of Gary, Indiana.

3.      The Fund is a Union Pension Fund located in Hillside, Illinois.  The Fund is a

pension fund plan which is governed under the laws of ERISA.

4.      Cingrani worked as a sheet metal worker since approximately 1978 for various

contractors that were subject to the Sheet Metal Workers' Local No. 73 collective bargaining

agreement and contractually required to contribute to the Fund on behalf of Cingrani based on

the number of hours Cingrani worked.  Cingrani has been a member of the Sheet Metal Workers'

Local No. 73 since 1978.

**Exhaustion of Remedies**

5.      As a member of Local 73, Cingrani was entitled to various benefits which included a pension that was controlled by the Fund. The pension plan was subject to ERISA. Under the terms of the pension plan, the Fund made the decision to grant or deny benefits.

6.      Cingrani applied for pension benefits with the Fund in 2014. On March 3, 2015, the Fund ruled that Cingrani was not entitled to a full pension because approximately 50% of it had been assigned to his late wife as part of an Illinois Qualified Domestic Relations Order ("QDRO"). (Exhibit 1 to this Complaint)

7.      Cingrani filed a timely appeal of this decision. On May 4, 2015, the Fund informed Cingrani that the Trustees of the Plan were "deadlocked" on whether to approve Cingrani's pension thereby resulting in the denial of his appeal. (Ex. 2) This decision was a final and binding decision and Cingrani fully exhausted his administrative remedies under the Pension Fund plan. On May 4, 2015, The Fund informed Cingrani of his right to file a legal action under §502(a) of ERISA.

**The Fund's Denial of Full Pension Benefits to Cingrani Was Wrongful**

8.      Cingrani was married to Deborah Cingrani on May 1, 1982 and was divorced from her on May 16, 2002.

9.      Cingrani was unrepresented at the divorce proceedings. As part of the divorce settlement, Deborah's attorney prepared a QDRO that purportedly gave Deborah the expectation of 50% of Cingrani's Local No. 73 pension accrued during the marriage from the Fund at some future date when Cingrani retired. (Ex. 3)

10.     For the purpose of the QDRO nomenclature and the Fund's Pension Plan,

Deborah was known as the Alternate Payee and Cirignani was the Participant.

11.     The QDRO did not contain language as to what would occur should Deborah, the Alternate Payee, die before Cingrani, the Participant, retired and became eligible for his pension.

12.     In the ordinary course, union pension funds review the language in QDROs to determine if they comply with the mandates of that fund's plan. The Fund approved Cingrani's QDRO. (Ex. 4)

13.     Cingrani was also entitled to a smaller pension from the National Sheet Metal Workers Union. The National union fund disapproved the QDRO drafted by Deborah's attorney because it did not contain language as to what would happen to the amount of the pension should Deborah die before Cingrani retired and became eligible for his pension. An amended QDRO relating to the national pension was entered on February 19, 2003. That 2003 amended QDRO specified that if Deborah were to die before Cingrani retired, her 50% expectation would revert to Cingrani. (Ex. 5, sec. 9) That 2003 QDRO indicated Deborah's intent and agreement to return her half of Cingrani's pension to him should she die before he did.

14.     The Fund's Pension Plan in effect at the time of the divorce in 2002 did not contain any provision as to what would happen if an Alternate Payee died before the Participant was eligible to receive his pension. (See Ex. 6, par. 5.2)

15.     In 2009, the Fund amended its pension plan. Section 5.2 of the Plan was amended to read, "If the Participant has elected a Husband-and-Wife Pension, with that application approved by the Trustees, but the spouse died before benefit payments have begun, and the Participant has not ceased working, the Participant's election for a Husband-and-Wife Pension is null and void, and the Participant may elect a single life benefit." (Ex. 7, par. 5.2) This amendment continues to be part of the current Plan.

16.     Deborah died on February 17, 2011, after the Pension Plan had been amended.

17.     In 2014, Cingrani applied for a pension to commence upon his retirement as of January 1, 2015. Pursuant to section 5.2 of the 2009 Plan, Cingrani was entitled to a full single life benefit. Deborah, the Alternate Payee, had died, and Cingrani had not ceased working at the time of Deborah's death.

18.     The Fund, however, advised Cingrani on July 30, 2014, that it would pay him only 50% of a full benefit because the 2002 QDRO had assigned the other 50% to Deborah, and "Consistent with the Plan's default rule for this issue, Ms. Cingrani's benefit reverted to the Plan upon her death because she had not yet commenced her benefits." (Ex. 8)

19.     The Fund attached a document that purported to state the Fund's "default rule" in paragraph 12: "Upon the Alternate Payee's death before benefits commence to him or her, the Alternate payee's assigned benefit will be forfeited and will revert to the **[Plan/Participant]."** (Ex. 9) Neither "Plan" nor "Participant" was struck.

20.     The common and accepted meaning of **[Plan/Participant]** is disjunctive—Plan or Participant. The Fund's own "default rule" does not mandate a reversion of Deborah's share to the Fund. The Fund's choice of a reversion to the Plan was arbitrary and capricious.

21.     In response to that decision, Cingrani obtained a second amended QDRO on February 18, 2015 that stated Cingrani's pension benefits would revert to him in the event of Deborah's death before any pension payments were made by the Fund. (Ex. 10, par. 8)

22.     The Fund refused to honor the February 18, 2015 court order. (See the letter rulings on March 3 and May 4, 2015; Exs. 1 and 2.)

23.     Cingrani filed a claim to the Fund. The Fund's Trustees did not approve Cingrani's claim in a letter ruling on March 3, 2015.  (Ex. 1).

24    Cingrani appealed the denial to the Trustees of the Fund. The Trustees did not approve Cingrani's appeal in a letter ruling on May 4, 2015. (Ex. 2)

25.    The Fund's decision and refusal to grant Cingrani benefits was arbitrary, unreasonable and capricious and constituted an abuse of discretion of whether Cingrani was entitled to a full pension.

26.    The Fund was in violation of its own 2009 Plan when it denied Cingrani full pension benefits.

27.    The Fund violated ERISA by wrongfully denying Cingrani's request for benefits.

28.    As a result of the Funds' actions, Cingrani has been wrongfully denied the proper amount of benefits.

## COUNT II

29.    For paragraphs 1-28 of Count II, Cingrani adopts and realleges paragraphs 1-28 of Count I.

30.    All of Cingrani's contributions to the Fund required by the labor-management collective bargaining agreements among Cingrani, Local No. 73 and Cingrani's employers, were fully paid.

31.    The Fund has unjustly retained approximately half of these contributions. The Fund's conversion of Cingrani's contributions violates the fundamental principles of justice, equity, and good conscience.

32.    By withholding approximately one-half of Cingrani's pension, and keeping it for itself, the Fund has been unjustly enriched.

33.    As a result of the Funds' actions, the Fund has wrongfully denied Cingrani the proper amount of his retirement benefits.

**WHEREFORE**, plaintiff Anthony Cingrani, Jr. requests that this Court enter a judgment in favor of him and against defendant Sheet Metal Workers' Local No. 73 Pension Fund, and that he be awarded the following relief:

A. That the Fund's decision denying Cingrani a full pension be reversed and that this court finds Cingrani is entitled to a full pension;

B. That the Fund be ordered to pay Cingrani all benefits and payments under the Pension Plan retroactive to the date he first qualified to receive such benefits, plus interest;

C. Attorney fees pursuant to 29 U.S.C. §1132 *et seq.*; and

D. Such other relief this Court deems appropriate.

Dated: July _____, 2015

Respectfully Submitted,

ANTHONY CINGRANI, JR.

By: ___/s/   Roderick J. Bergin___
      One of his Attorneys

Roderick J. Bergin
RODERICK J. BERGIN AND ASSOCIATES
427 Ferndale Road, Suite 300
Glenview, Illinois 60026
(847) 501-4500
roderickbergin@yahoo.com

Daniel Cummings
ROTHSCHILD, BARRY & MYERS LLP
150 South Wacker Drive, Suite 3025
Chicago, Illinois 60606
Tel: 312-372-2345
Fax: 312-372-2350
cummings@rbmchicago.com

# Exhibit 1

SHEET METAL WORKERS'
*International Association • Local Union No. 73*

4530 Roosevelt Road | Hillside, Illinois 60162 | 708.449.7373 | FAX 708.449.7333 

═══ Welfare and Pension Funds ═══

March 3, 2015

Mr. Roderick J. Bergin
Roderick J. Bergin & Associates
427 Ferndale Road
Glenview, IL 60025

*Member:* *Anthony Cingrani, Jr.*
*RE:* *Sheet Metal Workers Local Union No. 73 Pension Fund*
*Claim Regarding QDRO and Pension Amount*

Dear Mr. Bergin:

This letter is in response to Mr. Anthony Cingrani's claim regarding the application of a 2002 Qualified Domestic Relations Order (the "2002 QDRO") in relation to his pension under the Sheet Metal Workers' Local 73 Pension Fund (the "Fund"). Please be advised that the Fund's Appeals Committee (the "Committee") reviewed his claim at the most recent Committee meeting on February 26, 2015.

*After considering Mr. Cingrani's claim and all relevant materials and information, the Committee deadlocked on a motion to approve the claim, with one union Trustee voting to approve and one employer Trustee voting to deny. Because the motion was deadlocked, Mr. Cingrani's claim was not approved.*

The Committee considered the following materials and information in determining the claim:

- The Fund Office pension file for Mr. Cingrani;
- Pertinent parts of the Minutes from the Appeals Committee's meeting on October 29, 2014, where Mr. Cingrani's pension was initially approved;
- The QDRO approved in 2002 assigning a portion of Mr. Cingrani's benefit under the Fund to Ms. Deborah Cingrani (the "Alternate Payee");
- Judgment for Dissolution of Marriage between Mr. Cingrani and the Alternate Payee court-entered on May 16, 2002;
- A domestic relations order court-entered on February 19, 2003 assigning a portion of Mr. Cingrani's benefits under the Sheet Metal Workers' National Pension Fund to the Alternate Payee;
- Letter to Mr. Cingrani from the Fund Office dated July 30, 2014;
- Your letter on behalf of Mr. Cingrani dated January 27, 2015;
- Mr. Cingrani's initial claim letter received on November 10, 2014;

1485186.2

- A domestic relations order court-entered on February 18, 2015 purporting to amend the 2002 QDRO;
- Emergency Verified Petition to Amend or Modify Qualified Domestic Relations Order court-entered on February 18, 2015 and accompanying Notice of Motion;
- The Alternate Payee's Death Certificate;
- Affidavit of Nicole M. Snead;
- Affidavit of Anthony M. Cingrani;
- The Fund's QDRO Procedures;
- The Fund's 1997 and 2014 Plan Documents; and
- Any additional information submitted by Mr. Cingrani or by you on his behalf.

Mr. Cingrani's claim was not approved due to a deadlocked vote between the Trustees who decided his claim. The union Trustee voted to approve Mr. Cingrani's claim, while the employer Trustee voted to deny his claim.

**The employer Trustee's vote, which resulted in Mr. Cingrani's claim not being approved, was based on the following analysis:**

As to your argument that the 2002 QDRO is invalid or flawed, the employer Trustee determined that neither any applicable law nor the Fund's QDRO Procedures explicitly require that a QDRO contain the parties' signatures in order to be valid. In addition, the employer Trustee determined that the Fund's QDRO procedures do not require parties to submit separate orders to the Fund to assign a participant's benefits under the Pension and Annuity funds to an alternate payee; a single document may be used to assign both types of documents.

As to your contention that Mr. Cingrani is entitled to the portion of Fund benefits the 2002 QDRO assigns to the Alternate Payee because the "revised QDRO" court-entered on February 19, 2003 shows that the parties intended for him to receive such benefits in the event that the Alternate Payee died prior to commencing her pension, the February 19, 2003 order purports to assign to the Alternate Payee Mr. Cingrani's benefits with the Sheet Metal Workers' National Pension Fund, not his benefits under the Local 73 Pension Fund. The employer Trustee determined that even if this order was approved as a QDRO by the National Pension Fund, it only speaks as to the parties' intent with respect to Mr. Cingrani's National Pension Fund benefits, not his Local 73 Pension benefits. Further, the employer Trustee determined that applicable law requires the Fund to administer the 2002 QDRO *as written* and consistently with the terms of its Plan Document and QDRO Procedures, and that the Fund cannot infer the parties' intent from an order purporting to assign benefits under a different pension plan.

Regarding your claim that the Fund would be unjustly enriched if Mr. Cingrani does not receive the Alternate Payee's portion of the benefits, the employer Trustee determined that that even if the Fund is somehow unjustly enriched, there is no settled of definitive law (including case law) that relieves the Fund from its duty to administer the 2002 QDRO as written and consistent with the terms of the Plan Document and QDRO Procedures.

1485186.2

As to your submission of the domestic relations order that was court-entered on February 18, 2015 and purports to amend the 2002 QDRO, the employer Trustee determined that this order does not provide a basis to grant Mr. Cingrani's claim. Due to the 2002 QDRO's silence as to the fate of the benefits after the Alternate Payee's death before benefit commencement, the Fund applied the default rule in such a scenario pursuant to its QDRO Procedures. The Fund's default practice in the event of an alternate payee's death prior to her commencement of benefits is that the alternate payee's rights are considered to have been satisfied, and the alternate payee's portion of the benefits remains with the Fund (see p. B-3 of the Fund's QDRO Procedure Appendices and Item 12 of the Model QDRO).[1] Here, the 2002 QDRO created a right for the Alternate Payee to receive Fund benefits *for her life*. The employer Trustee determined that upon the Alternate Payee's death in 2011, this right was satisfied, and pursuant to the Fund's QDRO Procedures, the portion of the benefits assigned to her remained with the Fund.

The employer Trustee further determined that there is no legal authority that permits Mr. Cingrani to reverse this result, including the regulation you cited in support of Mr. Cingrani's position. *See* 29 C.F.R. § 2530.206(c)(1). That regulation states that a domestic relations order does not fail to be a QDRO "solely because of the time at which it is issued." As an example, the regulation states that if a participant dies while an order is pending qualification, the order does not subsequently fail to be a QDRO solely because of the participant's death. 29 C.F.R. § 2530.206(c)(2). In such a case, a QDRO approved after the participant's death would be effective to award benefits on a prospective basis. However, the employer Trustee determined that there is no authority for the proposition that an amended domestic relations order can retroactively reverse a result that has already occurred pursuant to the terms of an existing QDRO (in conjunction with the Fund's QDRO Procedures and Plan Document). That is, the employer Trustee determined that there is no legal authority that requires or allows the Fund to award o Mr. Cingrani the benefits assigned to the Alternate Payee by the 2002 QDRO after the Alternate Payee's right to receive such benefits has been satisfied upon her death.

As to your submission of the notarized affidavits stating that Mr. Cingrani's children relinquish to him any "pension and pension-related benefits" they might have as a result of the Alternate Payee's death, the employer Trustee determined that these affidavits do not provide any basis to grant Mr. Cingrani's claim. As summarized above, the employer Trustee determined that the portion of Mr. Cingrani's benefits that were assigned to the Alternate Payee by the 2002 QDRO remained with the Fund upon her death pursuant to the Fund's QDRO procedures. The employer Trustee therefore determined that Mr. Cingrani's children do not (and did not) have a right to benefits from the Fund to begin with.

**The union Trustee's vote, which resulted in Mr. Cingrani's claim being deadlocked, was based on the following analysis:**

---

[1] In the event that a QDRO is silent on a certain issue, the default language as set forth in the Fund's Model QDRO and described in the QDRO Procedures applies with respect to the resolution of the issue (see p. C-1 of QDRO Procedure Appendices).

1485186.2

The union Trustee made the determination that the only valid court order and QDRO that exists in the Amended QDRO entered on February 18, 2015. The 2015 QDRO makes it clear that it amends and replaces the May 2, 2002 QDRO. The 2015 QDRO clearly states in Paragraph 8 that in the event the alternate payee dies prior to commencement of benefits, the benefits shall revert to the Participant. Therefore, Mr. Cingrani's claim should be granted and the 2015 QDRO should be administered according to its terms.

The union Trustee further made the determination the Pension Plan and the Summary Plan Description ("Plan Documents") are silent as to the fate of the alternate payee's benefits should the alternate payee die prior to commencement of benefits. Furthermore, the Fund's "default position" is found in forms entitled QDRO and Guide to Preparing a QDRO that are attached to the actual Plan Procedures. The union Trustee was not able to determine with certainty that these forms were provided to Mr. Cingrani or the Alternate Payee.

The union Trustee after review of the 2002 QDRO also made a determination that the 2002 QDRO should not have been considered a qualified domestic relations order and should not have been approved by the Fund Office. The 2002 QDRO suffers from several technical defects including but not limited to; assigning a benefit not allowed for under the Pension Plan or Annuity Plan by assigning one-half of the marital portion in the International Annuity Plan; failing to properly identify which plan the 2002 QDRO applies to as it states it applies to the "two Pension Plans" and never identifies the Local 73 Pension Plan. The Fund Office assumed the 2002 QDRO applied to the Local 73 Pension Plan; failing to have separate orders for three distinct plans under a Separate Interest Approach; and failing to provide proper notice to all parties as the 2002 QDRO is unsigned by counsel for the Alternate Payee and Participant.

Furthermore, the union Trustee made the determination and found that the current state of the law allows for a QDRO to be amended at any time. Specifically, the union Trustee relied upon 29 C.F.R. § 2530.206(b)(1) and 29 C.F.R. § 2530.206(c)(1), Example 1. The code states that "a domestic relations order shall not fail to be treated as a qualified domestic relations order solely because the order is issued after, or revises, another qualified domestic relations order or qualified domestic relations order," 29 C.F.R. § 2530.206(b)(1). While 29 C.F.R. § 2530.206(c)(1) states "a domestic relations order shall not fail to be treated as a qualified domestic relation order solely because of the time at which it is issued." Of particular note is Example 1 at 29 C.F.R. § 2530.206(c)(1) which is entitled "Orders issued after death." The union Trustee specifically noted that Example 1 stands for the proposition that a second domestic relations order which amends a deficient QDRO does not fail to be treated as a QDRO solely because it was issued after the death of a party. The union Trustee determined that there is no authority for the proposition that an amended domestic relations order cannot retroactively reverse a result that has already occurred pursuant to the terms of an existing QDRO.

The union Trustee also made the determination that the clear intent of the parties was to have the Alternate Payee's assigned portion revert back to Mr. Cingrani in the event the Alternate Payee died prior to commencement of benefits. This determination was based on review of the 2003 QDRO that includes such language and the affidavits supplied in Mr. Cingrani's claim.

Finally, the union Trustee made the determination that the Fund's failure to adhere to a valid court order, the 2015 QDRO, may result in contempt proceedings or litigation subjecting to the Fund to additional legal fees and costs.

In its review of Mr. Cingrani's claim, the Committee considered all comments, documents, records and other information submitted by Mr. Cingrani or by you on his behalf, without regard to whether such information was submitted or considered in the initial benefit determination. We will provide Mr. Cingrani, or his authorized representative, upon request and free of charge, access to and copies of all documents, records and other information relevant to Mr. Cingrani's claim. A document is considered relevant to Mr. Cingrani's claim if it: (i) was relied upon in making the initial benefit determination; (ii) was submitted, considered or generated in the course of making the initial benefit determination, without regard as to whether it was relied upon in the decision; or (iii) demonstrates that the claim determination was made in compliance with provisions of the Fund as applied to similarly-situated claimants.

If Mr. Cingrani disagrees with the Fund's assessment of his pension, he has the right to appeal. Mr. Cingrani has sixty (60) days to file an appeal of this decision with the Board of Trustees. His appeal must be in writing and submitted to the Board of Trustees at the address above within this time. With his appeal, Mr. Cingrani, or his authorized representative on his behalf, may submit written comments, statements, documents, records or other information that shows that Mr. Cingrani is entitled to a benefit from the Fund so that the Trustees can make a determination on appeal.

The Fund Office will notify Mr. Cingrani of an appeal decision, whether adverse or not, as soon as possible, but not later than five (5) days after the next quarterly Board of Trustees meeting. Mr. Cingrani may bring a civil action under ERISA § 502(a) following an adverse benefit determination on appeal. Until Mr. Cingrani has submitted an appeal of this decision under the appeal procedure described above and all of his appeal rights under the Plan have been exhausted, he may not file a lawsuit or other action against the Fund or the Board of Trustees. Failure to timely appeal this decision or follow the administrative procedures outlined in the Plan may waive Mr. Cingrani's right to file suit in court.

The decision of the Board of Trustees on appeal will be binding on Mr. Cingrani and all persons dealing with the Plan or claiming any benefit under the Plan. The final decision on appeal will be accorded judicial deference in any later court action or administrative proceeding to the extent that it does not constitute an abuse of discretion and is not arbitrary and capricious. In addition, the Plan contains a two (2) year statute of limitations. Notwithstanding any other state or federal law, any and all legal actions relating to this matter must be filed within two (2) years of the Board of Trustees' final determination on appeal.

Sincerely,


Sheet Metal Workers Local Union No. 73 Pension Fund

1485186.2

# Exhibit 2



SHEET METAL WORKERS'
*International Association • Local Union No. 73*

4530 Roosevelt Road | Hillside, Illinois 60162 | 708.449.7373 | FAX 708.449.7333





Welfare and Pension Funds

May 4, 2015

Mr. Roderick J. Bergin
Roderick J. Bergin & Associates
427 Ferndale Road
Glenview, IL 60025

*Member:*     *Anthony Cingrani, Jr.*
*RE:*     *Sheet Metal Workers Local Union No. 73 Pension Fund*
     *Appeal Regarding QDRO and Pension Amount*

Dear Mr. Bergin:

This letter is in response to Mr. Anthony Cingrani's appeal regarding the application of a qualified domestic relations order in relation to his pension under the Sheet Metal Workers' Local 73 Pension Fund (the "Fund"). Please be advised that the Fund's Board of Trustees reviewed his appeal at its most recent meeting on April 29, 2015.

***After considering Mr. Cingrani's appeal and all relevant materials and information, the Trustees deadlocked on a motion to approve the appeal, with one union Trustee voting to approve and one employer Trustee voting to deny. Because the motion was deadlocked, Mr. Cingrani's appeal was not approved.***

The Trustees considered the following materials and information in determining the appeal:

- Your hand-delivered letter on behalf of Mr. Cingrani dated April 29, 2015 requesting an in-person hearing;
- Your letter on behalf of Mr. Cingrani dated March 12, 2015;
- Claim response letter dated May 3, 2015 describing the Appeals Committee's deadlock at its February 26, 2015 meeting with respect to Mr. Cingrani's claim;
- Pertinent portions of the Minutes from the Appeals Committee's meeting on February 26, 2015 where the Appeals Committee deadlocked with respect to Mr. Cingrani's claim;
- Old version of the Fund's QDRO Procedures discovered by the Fund Office and co-counsel since the Appeals Committee's decision on February 26, 2015;
- The Fund Office pension file for Mr. Cingrani;
- Pertinent portions of the Minutes from the Appeals Committee's meeting on October 29, 2014, where Mr. Cingrani's pension was initially approved;

- The QDRO approved in 2002 (the "2002 QDRO") assigning a portion of Mr. Cingrani's benefit under the Fund to Ms. Deborah Cingrani (the "Alternate Payee");
- Judgment for Dissolution of Marriage between Mr. Cingrani and the Alternate Payee court-entered on May 16, 2002;
- A domestic relations order court-entered on February 19, 2003 assigning a portion of Mr. Cingrani's benefits under the Sheet Metal Workers' National Pension Fund to the Alternate Payee;
- Letter to Mr. Cingrani from the Fund Office dated July 30, 2014;
- Your letter on behalf of Mr. Cingrani dated January 27, 2015;
- Mr. Cingrani's initial appeal letter received on November 10, 2014;
- A domestic relations order court-entered on February 18, 2015 purporting to amend the 2002 QDRO;
- Emergency Verified Petition to Amend or Modify Qualified Domestic Relations Order court-entered on February 18, 2015 and accompanying Notice of Motion;
- The Alternate Payee's Death Certificate;
- Affidavit of Nicole M. Snead;
- Affidavit of Anthony M. Cingrani;
- The Fund's QDRO Procedures;
- The Fund's 1997 and 2014 Plan Documents; and
- Any additional information submitted by Mr. Cingrani or by you on his behalf.

Please note that the Fund's claim and appeal procedures do not permit a claimant or their representative to appear in person before the Board of Trustees, and that claimants and their representatives are free to submit any written comments, documents, records or other information in support of a claim or appeal, all of which are considered by the Trustees when deciding a claim or appeal.

Mr. Cingrani's appeal was not approved due to a deadlocked vote between the Trustees who decided his appeal. The union Trustee voted to approve Mr. Cingrani's appeal, while the employer Trustee voted to deny his appeal.

**The employer Trustee's vote, which resulted in Mr. Cingrani's appeal not being approved, was based on the following analysis:**

As to your argument that the 2002 QDRO is invalid or flawed, the employer Trustee determined that neither any applicable law nor the Fund's QDRO Procedures explicitly require that a QDRO contain the parties' signatures in order to be valid. In addition, the employer Trustee determined that the Fund's QDRO procedures do not require parties to submit separate orders to the Fund to assign a participant's benefits under the Pension and Annuity funds to an alternate payee; a single document may be used to assign both types of documents.

As to your contention that Mr. Cingrani is entitled to the portion of Fund benefits the 2002 QDRO assigns to the Alternate Payee because the "revised QDRO" court-entered on February 19, 2003 shows that the parties intended for him to receive such benefits in the event that the Alternate Payee died prior to commencing her pension, the February 19, 2003 order purports to

assign to the Alternate Payee Mr. Cingrani's benefits with the Sheet Metal Workers' National Pension Fund, not his benefits under the Local 73 Pension Fund. The employer Trustee determined that even if this order was approved as a QDRO by the National Pension Fund, it only speaks to the parties' intent with respect to Mr. Cingrani's National Pension Fund benefits, not his Local 73 Pension benefits. Further, the employer Trustee determined that applicable law requires the Fund to administer the 2002 QDRO *as written* and consistently with the terms of its Plan Document and QDRO Procedures, and that the Fund cannot infer the parties' intent from an order purporting to assign benefits under a different pension plan.

Regarding your claim that the Fund would be unjustly enriched if Mr. Cingrani does not receive the Alternate Payee's portion of the benefits, the employer Trustee determined that even if the Fund is somehow unjustly enriched, there is no settled of definitive law (including case law) that relieves the Fund from its duty to administer the 2002 QDRO as written and consistent with the terms of the Plan Document and QDRO Procedures.

As to your submission of the domestic relations order that was court-entered on February 18, 2015 and purports to amend the 2002 QDRO, the employer Trustee determined that this order does not provide a basis to grant Mr. Cingrani's appeal. Due to the 2002 QDRO's silence as to the fate of the benefits after the Alternate Payee's death before benefit commencement, the Fund applied the default rule in such a scenario pursuant to its QDRO Procedures. The Fund's default practice in the event of an alternate payee's death prior to her commencement of benefits is that the alternate payee's rights are considered to have been satisfied, and the benefits assigned to the alternate payee do not become payable to the participant (see p. B-3 of the Fund's QDRO Procedure Appendices and Item 12 of the Model QDRO).[1] Here, the 2002 QDRO created a right for the Alternate Payee to receive Fund benefits *for her life*. The employer Trustee determined that upon the Alternate Payee's death in 2011, this right was satisfied, and pursuant to the Fund's QDRO Procedures, the portion of the benefits assigned to her did not then become payable to Mr. Cingrani.

The employer Trustee further determined that there is no legal authority that permits Mr. Cingrani to reverse this result, including the regulation you cited in support of Mr. Cingrani's position, 29 C.F.R. § 2530.206(c)(1). That regulation states that a domestic relations order does not fail to be a QDRO "solely because of the time at which it is issued." As an example, the regulation states that if a participant dies while an order is pending qualification, the order does not subsequently fail to be a QDRO solely because of the participant's death. 29 C.F.R. § 2530.206(c)(2). In such a case, a QDRO approved after the participant's death would be effective to award benefits on a prospective basis. However, the employer Trustee determined that there is no authority for the proposition that an amended domestic relations order can retroactively reverse a result that has already occurred pursuant to the terms of an existing QDRO (in conjunction with the Fund's QDRO Procedures and Plan Document). That is, the employer Trustee determined that there is no legal authority that requires or allows the Fund to

---

[1] In the event that a QDRO is silent on a certain issue, the default language as set forth in the Fund's Model QDRO and described in the QDRO Procedures applies with respect to the resolution of the issue (see p. C-1 of QDRO Procedure Appendices).

award to Mr. Cingrani the benefits assigned to the Alternate Payee by the 2002 QDRO after the Alternate Payee's right to receive such benefits has been satisfied upon her death.

As to your submission of the notarized affidavits stating that Mr. Cingrani's children relinquish to him any "pension and pension-related benefits" they might have as a result of the Alternate Payee's death, the employer Trustee determined that these affidavits do not provide any basis to grant Mr. Cingrani's appeal. Under the Plan, Mr. Cingrani's children do not (and did not) have a right to receive the Alternate Payee's Fund benefits to begin with.

Since the Appeals Committee's decision regarding Mr. Cingrani's claim at its February 26, 2015 meeting, the Fund Office and co-counsel have discovered an old version of the Fund's QDRO Procedures, which is enclosed ("Prior QDRO Procedures"). It is unclear what time period these Prior QDRO Procedures were in place. These Prior QDRO Procedures are silent as to the fate of an alternate payee's benefits in the event s/he predeceases the participant before commencing benefits. That is, the Prior QDRO Procedures do not provide a default rule for such a situation. The employer Trustee determined that the Prior QDRO Procedures also do not provide a basis to grant Mr. Cingrani's appeal, despite their silence as to the fate of the alternate payee's benefits in the event she predeceases the participant before commencing benefits. Nothing in the Prior QDRO Procedures, the Plan's current QDRO Procedures, the Fund's Plan Document, any other of the Fund's governing documents, or any other authority require or even allow the Fund to pay the Alternate Payee's benefits to Mr. Cingrani.

**The union Trustee's vote, which resulted in Mr. Cingrani's appeal being deadlocked, was based on the following analysis:**

The union Trustee made the determination that the only valid court order and QDRO that exists is the Amended QDRO entered on February 18, 2015. The 2015 QDRO makes it clear that it amends and replaces the May 2, 2002 QDRO. The 2015 QDRO clearly states in Paragraph 8 that in the event the alternate payee dies prior to commencement of benefits, the benefits shall revert to the Participant. Therefore, Mr. Cingrani's appeal should be granted and the 2015 QDRO should be administered according to its terms.

The union Trustee further made the determination that the Pension Plan and the Summary Plan Description ("Plan Documents") are silent as to the fate of the alternate payee's benefits should the alternate payee die prior to commencement of benefits. Furthermore, the Fund's "default position" is found in forms entitled QDRO and Guide to Preparing a QDRO that are attached to the actual Plan Procedures. The union Trustee was not able to determine with certainty that these forms were provided to Mr. Cingrani or the Alternate Payee.

The union Trustee after review of the 2002 QDRO also made a determination that the 2002 QDRO should not have been considered a qualified domestic relations order and should not have been approved by the Fund Office. The 2002 QDRO suffers from several technical defects including but not limited to: assigning a benefit not allowed for under the Pension Plan or Annuity Plan by assigning one-half of the marital portion in the International Annuity Plan; failing to properly identify which plan the 2002 QDRO applies to as it states it applies to the "two Pension Plans" and never identifies the Local 73 Pension Plan. The Fund Office assumed

the 2002 QDRO applied to the Local 73 Pension Plan; failing to have separate orders for three distinct plans under a Separate Interest Approach; and failing to provide proper notice to all parties as the 2002 QDRO is unsigned by counsel for the Alternate Payee and Participant.

Furthermore, the union Trustee made the determination and found that the current state of the law allows for a QDRO to be amended at any time. Specifically, the union Trustee relied upon 29 C.F.R. § 2530.206(b)(1) and 29 C.F.R. § 2530.206(c)(1), Example 1. The code states that "a domestic relations order shall not fail to be treated as a qualified domestic relations order solely because the order is issued after, or revises, another qualified domestic relations order or qualified domestic relations order," 29 C.F.R. § 2530.206(b)(1). While 29 C.F.R. § 2530.206(c)(1) states "a domestic relations order shall not fail to be treated as a qualified domestic relation order solely because of the time at which it is issued." Of particular note is Example 1 at 29 C.F.R. § 2530.206(c)(1) which is entitled "Orders issued after death." The union Trustee specifically noted that Example 1 stands for the proposition that a second domestic relations order which amends a deficient QDRO does not fail to be treated as a QDRO solely because it was issued after the death of a party. The union Trustee determined that there is no authority for the proposition that an amended domestic relations order cannot retroactively reverse a result that has already occurred pursuant to the terms of an existing QDRO.

The union Trustee also made the determination that the clear intent of the parties was to have the Alternate Payee's assigned portion revert back to Mr. Cingrani in the event the Alternate Payee died prior to commencement of benefits. This determination was based on review of the 2003 QDRO that includes such language and the affidavits supplied in Mr. Cingrani's appeal.

Finally, the union Trustee made the determination that the Fund's failure to adhere to a valid court order, the 2015 QDRO, may result in litigation subjecting the Fund to additional legal fees and costs.

In its review of Mr. Cingrani's appeal, the Trustees considered all comments, documents, records and other information submitted by Mr. Cingrani or by you on his behalf, without regard to whether such information was submitted or considered in the initial benefit determination. We will provide you, upon request and free of charge, access to and copies of all documents, records and other information relevant to Mr. Cingrani's appeal. A document is considered relevant to his appeal if it: (i) was relied upon in making the initial benefit determination; (ii) was submitted, considered or generated in the course of making the initial benefit determination, without regard as to whether it was relied upon in the decision; or (iii) demonstrates that the appeal determination was made in compliance with provisions of the Fund as applied to similarly-situated claimants.

This concludes the appeal process and commences the Fund's 2-year limitations period within which Mr. Cingrani must bring a civil action, if he chooses to do so. This decision of the Board of Trustees on appeal is final and binding on Mr. Cingrani and all persons dealing with the Fund or claiming any benefit under the Fund. Mr. Cingrani may bring a civil action under ERISA § 502(a) regarding the denial of his appeal. As mentioned above, the Fund's plan document contains a 2-year statute of limitations. Notwithstanding any other state or federal law, any and all legal actions relating to this matter must be filed within 2 years of the date of this final

determination.  Failure to timely bring such an action within the Fund's 2-year limitations period may waive Mr. Cingrani's right to file suit in court.

Sincerely,


Sheet Metal Workers Local Union No. 73 Pension Fund

# Exhibit 3

ENTERED

MAY 1 6 2002

JAMES J. GAVIN #1701

STATE OF ILLINOIS )
                ) SS
COUNTY OF COOK )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF: )
                             )
DEBORAH A. CINGRANI, )
                             )
             Petitioner, )    NO. 02D6—30618
                             )
      AND )
                             )
ANTHONY CINGRANI, JR., )
                             )
            Respondent. )

<u>QUALIFIED DOMESTIC RELATIONS ORDER</u>

This case coming on to be heard upon the entry of the Judgment for Dissolution of Marriage under even date, by agreement of the Parties and the Court being fully advised in the premises.

IT IS HERBY ORDERED BY THE COURT AS FOLLOWS:

It is the intent of the Court that the provisions of this Order operate as an effective assignment of DEBORAH A. CINGRANI'S interest in the Plans, including two Pension Plans and one Annuity Plan, set forth below under both state and federal law, for all purposes, and constitute a "Qualified Domestic Relations Order" in compliance with 0414(p) of the Internal Revenue Code of 1986, as amended (hereinafter referred to as the IRC) and 0206(d)(3) of the Employment Retirement Income Security Act of 1974, as amended (hereinafter referred to as ERISA).

    A.    The address of The Sheet Metal Workers' International Association Local Union No. 73 is 205 W. Wacker Drive, Room 1719, Chicago, Illinois 60606 and the address of The Sheet Metal Workers' National Pension Fund is 601 N. Fairfax Street, Suite 500, Alexandria, Virginia 22314.

    B.    ANTHONY CINGRANI, JR. is the Participant in the two Pension Plans as well as the Sheet Metal Workers' International Association Local Union No. 73 Annuity Plan. His address is 9629 S. Millard, Evergreen Park, Illinois 60805. His Social Security Number is 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 and his date of birth is October 10, 1955. DEBORAH A. CINGRANI is the Alternate Payee. Her address is 9629 S. Millard, Evergreen Park, Illinois 60805. Her telephone number is (708) 425-0349. Her Social Security Number is 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 and her date of birth is October 27, 1957.

    C.    Pursuant to IRC 0401(a)(13) and 0414(p)(1)(A) and (B) and ERISA 0206(d)(3) and in accordance with the Illinois Domestic Relations Law, the Alternate Payee's assigned benefits for the two Pension Plans and the Annuity Plan shall be calculated as follows: 50 percent of the marital pension,, marital pension being defined as the Participant's accrued vested benefit under the Plans from the date of the marriage, being May 1,



EXHIBIT
(GROUP)
A

1982, to the date of the Judgment of Dissolution of Marriage, being May 16, 2002, dissolving the marriage between Petitioner and Respondent.

In the event that the Plans shall provide for any additional benefit or accruals to which the Participant shall be entitled, the Alternate Payee shall be entitled to the Alternate Payee's proportionate share as defined in the Order of additions or accruals.

1. For each of the two Retirement Plans, payments under the Retirement Plans to the Alternate Payee are to begin at the option of the Alternate Payee, on or after the date on which the Participant attains the earliest retirement age under the Retirement Plans or at such later time as the Alternative Payee may elect in writing to The Sheet Metal Workers' International Association Local Union No. 73 and The Sheet Metal Workers' National Pension Fund. Regarding the Annuity Plan, payments thereunder to the Alternate Payee shall begin at the option of the Alternate Payee at the earliest date possible under said Annuity Plan. Notwithstanding the preceding sentence, payments under the Retirement Plans shall not begin until a date after this Order is determined to be Qualified.

2. The Participant's accrued benefit under the Retirement Plans and Annuity Plan shall be reduced actuarially by the equivalent of the amount required to be paid to the Alternate Payee determined s of the date set forth above in C.1.

3. Survivor benefits shall be allocated as follows:

The Alternate Payee shall be treated as the surviving spouse for purposes of survivor benefits.

A. Benefits paid to the Alternate Payee from a Plan shall not exceed the benefits (determined on the basis of actuarial value) to which the Participant is entitled under such Plan.

B. The Alternate Payee shall not be entitled to Plan benefits that are already required to be paid to another Alternate Payee under another Order previously determined to be a Qualified Domestic Relations Order.

C. This Order shall remain qualified with respect to any successor plans to the Plans identified in this QDRO.

D. In case of conflict between the terms of this QDRO and the terms of a Plan, the terms of the Plan shall prevail. For example, if a Plan is terminated and all benefits are distributed, amounts due under this QDRO from that Plan shall be immediately distributable.

E. The Participant and the Alternate Payee shall keep The Sheet Metal Workers' International Association Local Union No. 73 and The Sheet Metal Workers' National Pension Fund and their Plan Administrators informed of his or her current address and telephone number.

-2-

In case of the Retirement Plan and the Annuity Plan, notice of change of address or telephone number shall be made in writing to the Plan Administrated addressed as follows:

1.   The Sheet Metal Workers' International Association Local Union No. 73
     205 W. Wacker Drive, Room 1719
     Chicago, Illinois  60606

2.   The Sheet Metal Workers' National Pension Fund
     601 N. Fairfax Street, Suite 500
     Alexandria, Virginia  22314

F.   All notices to be given or documents to be sent to the Plan Administrator shall be addressed as set forth in Section E and shall not be deemed give to a Plan unless sent Certified Mail, Return Receipt Requested.

IT IS FURTHER ORDERED that the Parties shall execute any documents deemed necessary by either the Court or the Board of Trustees, and the Court may issue any further Order, necessary to effectuate the purposes of this Order.

APPROVED:


THE SHEET METAL WORKERS' INTERNATIONAL
ASSOCIATION LOCAL UNION NO. 73


BY: _____
         CHIEF EXECUTIVE OFFICER


THE SHEET METAL WORKERS' NATIONAL PENSION FUND


BY: _____
         CHIEF EXECUTIVE OFFICER


DATED: _____



ENTER:   ENTERED
         MAY 1 6 2002
         JAMES J. GAVIN #1701

         _____
         JUDGE


WILLIAM J. BRYAN
17926 DIXIE HIGHWAY
HOMEWOOD, IL  60430
(708) 957-2574
ATTORNEY NO. 25060

-3-

# Exhibit 4



# SHEET METAL WORKERS'
## INTERNATIONAL ASSOCIATION
### LOCAL UNION NO. 73
**PENSION AND WELFARE FUNDS**



**205 W. WACKER DRIVE • CHICAGO, ILLINOIS 60606 • TELEPHONE: 312-372-3653 FAX: 312-372-8149 • ROOM 1719**

July 1, 2002

Mr. William J Bryan
17926 Dixie Highway
Homewood, IL 60430

**Re: Notice of Determination With Respect to Domestic**
**Relations Order Number 02 D6-30618**

**Plan Participant:**     **Anthony Cingrani, Jr.**

**Alternate Payee(s):**   **Deborah A. Cingrani**

Dear Mr. Bryan:

You have previously been sent a copy of the Notice of Receipt of Domestic Relations Order with respect to the Order indicated above (the "Order"). We have determined that the Order is a "Qualified Domestic Relations Order", provided that it is applied as stated below. If the Fund's interpretation differs from that of the parties, please inform me immediately.

Please note the Order states that the alternate payee is entitled to benefit payments from two retirement plans and one annuity plan. We have provided benefit payment estimates for the Sheet Metal Workers' Local 73 Pension Plan only. The National Pension is separate from Local 73 and administered from Washington D.C.

It appears that the Order provides the alternate payee, Deborah A. Cingrani, with 50% of the actuarial present value of the participant's accrued benefit earned during the marriage (May 1, 1982 through May 16, 2002).

The alternate payee may elect any form of payment available under the Plan (other than a joint-and-survivor annuity with a spouse who is not the participant) that pays a monthly benefit for her life expectancy. The alternate payee may elect to commence receipt of her benefit on or after the participant's earliest retirement date under the Plan. The alternate payee will be treated as the surviving spouse under the pre-retirement survivor annuity.

Mr. William J Bryan
July 1, 2002
Page Two

The Order states that if the Plan provides additional benefits or accruals to the Participant than the alternate payee will be entitled to her proportionate share. We assume this refers to pre-retirement and post-retirement benefit increases.

The amounts payable in this letter are only estimates and only apply under the specific situations outlined. Actuarial assumptions and data used in making these pension benefit calculations are as follows:

| | |
|---|---|
| Participant's Date of Birth: | October 10, 1955 |
| Alternate Payee's Date of Birth: | October 27, 1957 |
| Accrued Benefit as of May 16, 2002: | $933.00 |
| Percentage Assigned to the Alternate Payee: | 50% |
| Interest Rate: | 7.0% |
| Mortality Assumption: | 1983 GAM Tables |

If the alternate payee elects to commence receipt of her benefit on the participant's earliest retirement date (November 1, 2010, age 55) she will receive $157.60 per month in the form of a single life annuity with no survivor benefits. This calculation assumes that the participant is not in pay-status and, therefore, the alternate payee does not qualify for the early retirement subsidy inherent in the Plan's early retirement factors. Accordingly, the alternate payee's benefit is calculated on a true actuarial reduction. Since the Order is silent, the alternate payee's benefit will not be recalculated if the participant subsequently retires with an early retirement subsidy.

If the participant and alternate payee **both** elect to begin receiving their benefits on the participant's earliest regular retirement date (November 1, 2017, age 65) the alternate payee will receive $382.60 per month in the form of a single life annuity with no survivor benefits.

The participant's benefit in the form of a single life annuity, before adjustment for any optional forms of benefit (including early retirement), should be reduced by $466.50.

Please advise the Fund Administrator immediately if the above Order is revised or is withdrawn. If you move, please inform the Fund of your change of address. Funds payable to the Alternate Payee will be made upon her application for benefits.

If you have any questions regarding this Notice, please contact the undersigned at the address or telephone number set forth in the letterhead.

Sincerely,

Peter A. Driscoll
Fund Administrator

# Exhibit 5

## SHEET METAL WORKERS' NATIONAL PENSION FUND
## MODEL SHARED INTEREST QDRO
### Revised 7/1/02

In re the Marriage or Support of:    )
    )
DEBORAH A. CINGRANI,             )        CASE NO. 02 D6-30618
    )
      Petitioner,        )        QDRO APPLICATION NO. 78836
    )
and                        )
    )
ANTHONY CINGRANI, JR.,     )
    )
      Respondent.      )

**Qualified Domestic Relations Order**

This Order is intended to be a Qualified Domestic Relations Order (QDRO), as defined in Section 206(d) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and Section 414(p) of the Internal Revenue Code of 1986, as amended ("Code"). This QDRO is granted in accordance with the Illinois Domestic Relations Law and Qualified Illinois Domestic Relations Order 40 ILCS 5/1-119, which relate to marital property rights, child support, and/or spousal support between spouses and former spouses in matrimonial actions. [The parties were married on May 1, 1982 and divorced on May 16, 2002.]

**Section 1. Plan Identification**

This Order applies to the Sheet Metal Workers' National Pension fund ("Fund" or "Plan").

**Section 2. Participant**

The Participant named below is or may become eligible to receive a benefit from the
Fund.

Participant's Name:          ANTHONY CINGRANI, JR.

Last Known Mailing Address:    9629 S. MILLARD
                              EVERGREEN PARK, IL   60805

Social Security Number:      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

Date of Birth:           OCTOBER 2, 1955

Participant's Counsel (if any):    N/A

Counsel's Address:         N/A

The Participant has not begun receiving benefit payments from the Fund.

Section 3. Alternate Payee

The Alternate Payee is a former spouse of the Participant who is recognized by this Order as having a right to receive all, or a portion of the benefits payable under the Plan with respect to the Participant.

| | |
|---|---|
| Alternate Payee's Name: | DEBORAH A. CINGRANI |
| Last Known Mailing Address: | 320 CIRCLEGATE |
| | NEW LENOX, IL 60451 |
| Social Security Number: | 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 |
| Date of Birth: | OCTOBER 27, 1957 |
| Alternate Payee's Counsel (if any): | WILLIAM J. BRYAN |
| Counsel's Address: | 17926 DIXIE HIGHWAY |
| | HOMEWOOD, IL 60430 |

Section 4. Amount of Benefit

The Alternate Payee is assigned FIFTY PERCENT (50%) of the Participant's monthly benefit in the Fund.

Section 5. Division of Benefit

The Alternate Payee will receive her benefit as a share of the Participant's benefit.

Section 6. Benefit Commencement

The Alternate Payee may elect to commence receiving her benefits at any time after the Participant retires and begins to receive benefits under the Plan.

Section 7. Benefit End

The Alternate Payee's benefit under Section 4 will be paid until the earlier of the Participant's or the Alternate Payee's death.

Section 8. Participant's Death

If the Participant predeceases the Alternate Payee prior to either party commencing his/her benefits, the Alternate Payee will be treated as the surviving spouse for purposes of the preretirement survivor annuity benefit available under

2

the Plan. The Alternate Payee's right to the spousal survivor annuity will be paid in lieu of the benefit otherwise assigned in Section 4 and will apply to 100% of the Participant's accrued benefit as of the date Participant dies.

## Section 9. Alternate Payee's Death

If the Alternate Payee predeceases the Participant, the Alternate Payee's benefit will revert to the Participant and the Participant will receive the full monthly benefit awarded at his/her retirement.

## Section 10. Compliance with Applicable Laws

Nothing in this Order requires the Fund to:

(a)    pay any benefits not permitted under ERISA or the Code;

(b)    provide any form of benefit or option not provided by the Fund with respect to the Plan;

(c)    pay total benefits with a value in excess of the value of benefits the Participant would otherwise receive;

(d)    pay benefits to the Alternate Payee that are required to be paid to another alternate payee under another QDRO in effect prior to this Order.

## Section 11. Fund's Discharge of Liability

The Fund and its sponsors, employees, agents and fiduciaries shall be discharged from liability to the extent of any payments made pursuant to this Order, as provided in Section 206 of ERISA.

The approval of this Order by the Fund indicates only that the Fund has determined that the Order satisfies the requirements of a QDRO, does not violate the terms of the Plan, and is capable of administration under a reasonable construction. It is not to be taken as a determination by the Fund that the Order makes a legal, proper, fair or equitable division of property .Plan officials, Trustees and the Plan assume no responsibility to the parties for supervising the correctness or fairness of that division.

## Section 12. Reservation of Jurisdiction

This Court reserves jurisdiction to amend, establish, or maintain the status of this Order as a QDRO, as provided under ERISA or the Code.

3

**Section 13. The Parties' Cooperation**

The Participant and Alternate Payee acknowledge the foregoing division of Participant's pension benefits and authorize the release of any information required form the Fund to facilitate implementation of this Order. The Participant and Alternate Payee also agree to complete all necessary forms and to provide all necessary information, including employment data and filing of a vesting application.

_____
Attorney for Participant

_____
Attorney for Alternate Payee

Judge

ENTERED
FEB 1 9 2003
JAMES J. GAVIN #1701

WILLIAM J. BRYAN
17926 DIXIE HIGHWAY
HOMEWOOD, IL 60430
(708) 957-2574
ATTORNEY NO. 25060

4

# Exhibit 6

# SHEET METAL WORKERS' LOCAL NO. 73
## PENSION PLAN

Final Draft
October 1997

## SHEET METAL WORKERS' LOCAL NO. 73
## PENSION PLAN

### TABLE OF CONTENTS

Page

**ARTICLE 1 - DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . 1
    Section 1.1.    Trust Agreement . . . . . . . . . . . . . . . 1
    Section 1.2.    Pension Fund or Fund . . . . . . . . . . . . . . 1
    Section 1.3.    Trustees . . . . . . . . . . . . . . . . 1
    Section 1.4.    Pension Plan or Plan . . . . . . . . . . . . . . 1
    Section 1.5.    Union . . . . . . . . . . . . . . . . . 1
    Section 1.6.    Contributing Employer or Employer . . . . . . . . . . . . 2
    Section 1.7.    Collective Bargaining Agreement or Agreement . . . . . . . 2
    Section 1.8.    Employee . . . . . . . . . . . . . . . . 2
    Section 1.9.    Covered Employment . . . . . . . . . . . . . . 3
    Section 1.10.    Contribution Period . . . . . . . . . . . . . . 3
    Section 1.11.    Participant . . . . . . . . . . . . . . . . 3
    Section 1.12.    Beneficiary . . . . . . . . . . . . . . . 3
    Section 1.13.    Pensioner . . . . . . . . . . . . . . . . 4
    Section 1.14.    Normal Retirement Age . . . . . . . . . . . . . 4
    Section 1.15.    Calendar Year . . . . . . . . . . . . . . . 4
    Section 1.16.    Fiscal Year . . . . . . . . . . . . . . . . 4
    Section 1.17.    Year of Participation . . . . . . . . . . . . . . 5
    Section 1.18.    Work . . . . . . . . . . . . . . . . . 5
    Section 1.19.    Continuous Employment . . . . . . . . . . . . . 5
    Section 1.20.    Gender . . . . . . . . . . . . . . . . . 6
    Section 1.21.    Sheet Metal Industry . . . . . . . . . . . . . . 6
    Section 1.22.    Actuarial Present Value . . . . . . . . . . . . . 6
    Section 1.23.    Annuity Starting Date or Effective Date . . . . . . . . . 9
    Section 1.24.    Required Beginning Date . . . . . . . . . . . . 10
    Section 1.25.    Other Terms . . . . . . . . . . . . . . . . 10

**ARTICLE 2 - PARTICIPATION** . . . . . . . . . . . . . . . . . . 11
    Section 2.1.    Purpose . . . . . . . . . . . . . . . . . 11
    Section 2.2.    Participation . . . . . . . . . . . . . . . . 11
    Section 2.3.    Termination of Participation . . . . . . . . . . . . 11
    Section 2.4.    Reinstatement of Participation . . . . . . . . . . . . 12

**ARTICLE 3 - PENSION ELIGIBILITY AND AMOUNTS** . . . . . . . . . . . 13
    Section 3.1.    General . . . . . . . . . . . . . . . . . 13
    Section 3.2.    Normal Retirement Age Pension - Eligibility and
                 Amount . . . . . . . . . . . . . . . . . 13

i

SHEET METAL WORKERS' LOCAL NO. 73
PENSION PLAN

| Section 3.3. | Regular Pension - Eligibility | 14 |
| Section 3.4. | Regular Pension - Amount | 14 |
| Section 3.5. | Early Retirement Pension - Eligibility | 15 |
| Section 3.6. | Early Retirement Pension - Amount | 17 |
| Section 3.7. | Deferred Pension - Eligibility | 17 |
| Section 3.8. | Deferred Pension - Amount | 19 |
| Section 3.9. | Disability Pension - Eligibility and Commencement | 19 |
| Section 3.10. | Disability Pension - Amount | 21 |
| Section 3.11. | Definition of Total and Permanent Disability | 21 |
| Section 3.12. | Proof of Total and Permanent Disability | 22 |
| Section 3.13. | Earnings by a Disability Pensioner | 22 |
| Section 3.14. | Cessation of Total and Permanent Disability | 23 |
| Section 3.15. | Non-duplication with Military Pension | 24 |
| Section 3.16. | Rule of 95 Pension - Eligibility | 24 |
| Section 3.17. | Rule of 95 Pension - Amount | 24 |
| Section 3.18. | Death Benefit - Pre-retirement Lump Sum | 24 |
| Section 3.19. | Death Benefit - Post-Retirement | 26 |
| Section 3.20. | Optional Forms of Payment | 27 |
| (a) | Lump Sum Payment Option | 27 |
| (b) | Level Income Option | 28 |
| (c) | 75% Joint and Survivor Option | 32 |
| (d) | 100% Joint and Survivor Option | 33 |
| Section 3.21. | Non-duplication and Irrevocability | 35 |
| Section 3.22. | Application of Benefit Increases | 35 |
| Section 3.23. | Rounding of Benefit Amount | 36 |
| Section 3.24. | Supplemental Pension Amount | 36 |

ARTICLE 4 - PENSION CREDITS AND YEARS OF VESTING
SERVICE ... 38

| Section 4.1. | Pension Credits during the Contribution Period | 38 |
| Section 4.2. | Loss of Pension Credits before the Contribution Period | 42 |
| Section 4.3. | Years of Vesting Service | 44 |
| Section 4.4. | Breaks in Service | 45 |
| Section 4.5. | Grace Periods | 48 |

ARTICLE 5 - HUSBAND-AND-WIFE AND PRERETIREMENT SURVIVING
SPOUSE PENSIONS ...

| Section 5.1. | General | 51 |
| Section 5.2. | Husband-and-Wife Pension at Retirement | 51 |
| Section 5.3. | Preretirement Surviving Spouse Pension | 52 |
| Section 5.4. | Relation to a Qualified Domestic Relations Order | 55 |
| | | 57 |

**SHEET METAL WORKERS' LOCAL NO. 73**
**PENSION PLAN**

| | | |
|---|---|---|
| Section 5.5. | Trustees' Reliance | 57 |
| Section 5.6. | Benefit Adjustments if Payment of Preretirement Surviving Spouse Pension is Postponed | 58 |
| Section 5.7. | Survivor Benefit Limitations | 58 |

**ARTICLE 6 - APPLICATIONS, BENEFIT PAYMENTS AND RETIREMENT** ... 59

| | | |
|---|---|---|
| Section 6.1. | Applications | 59 |
| Section 6.2. | Information and Proof | 59 |
| Section 6.3. | Action of Trustees | 60 |
| Section 6.4. | Right of Appeal | 60 |
| Section 6.5. | Benefit Payments Generally | 61 |
| Section 6.6. | Retirement | 64 |
| Section 6.7. | Suspension of Benefits | 64 |
| Section 6.8. | Suspension Period Adjustment | 71 |
| Section 6.9. | Benefit Payments Following Suspension | 72 |
| Section 6.10. | Vested Status or Nonforfeitability | 75 |
| Section 6.11. | Non-duplication with Accident and Sickness Benefits | 76 |
| Section 6.12. | Incompetence or Incapacity of a Pensioner or Beneficiary | 76 |
| Section 6.13. | Notification of Continued Existence | 77 |
| Section 6.14. | Designation of Beneficiary | 77 |
| Section 6.15. | Failure to Designate a Beneficiary | 77 |
| Section 6.16. | Non-Assignment of Benefits | 78 |
| Section 6.17. | No Rights to Assets | 79 |
| Section 6.18. | Maximum Limitation | 80 |
| Section 6.19. | Mergers | 80 |
| Section 6.20. | Small Benefit Cash-Outs | 80 |
| Section 6.21. | Facility of Payment | 80 |
| Section 6.22. | Thirteenth Pension Checks | 81 |

**ARTICLE 7 - MISCELLANEOUS** ... 82

| | | |
|---|---|---|
| Section 7.1. | Non-Reversion | 82 |
| Section 7.2. | Limitation of Liability | 82 |
| Section 7.3. | New Employers | 83 |
| Section 7.4. | Terminated Employer | 84 |
| Section 7.5. | Termination | 85 |

**ARTICLE 8 - AMENDMENT** ... 88

| | | |
|---|---|---|
| Section 8.1. | Amendment | 88 |

SHEET METAL WORKERS' LOCAL NO. 73
PENSION PLAN

**ARTICLE 9 - PRO-RATA (RECIPROCAL) PENSIONS** . . . . . . . . . . . . 89
    Section 9.1.    Purpose . . . . . . . . . . . . . . . . . . . . . . . . . 89
    Section 9.2.    Home Fund . . . . . . . . . . . . . . . . . . . . . . 89
    Section 9.3.    Related Plans . . . . . . . . . . . . . . . . . . . . 90
    Section 9.4.    Related Pension Credits . . . . . . . . . . . . . . 90
    Section 9.5.    Combined Pension Credit . . . . . . . . . . . . . . 90
    Section 9.6.    Eligibility . . . . . . . . . . . . . . . . . . . . . 91
    Section 9.7.    Breaks in Service . . . . . . . . . . . . . . . . . . 91
    Section 9.8.    Non-duplication . . . . . . . . . . . . . . . . . . . . 92
    Section 9.9.    Pro-Rata Pension Amount . . . . . . . . . . . . . . 92
    Section 9.10.    Payment of Pro-Rata Pension . . . . . . . . . . . . 92
    Section 9.11.    Application to Pension Benefits Only . . . . . . . . . . 92
    Section 9.12.    Limited Transfer of Contributions . . . . . . . . . . . . 93

**ARTICLE 10 - ROLLOVERS** . . . . . . . . . . . . . . . . . . . . . . . . 94
    Section 10.1.    Rollovers . . . . . . . . . . . . . . . . . . . . . . . . 94
    Section 10.2.    Definitions . . . . . . . . . . . . . . . . . . . . . . . 94

Table 1

**Annuity Factors for Converting Pension Payments
Prior to Suspension of Benefits** . . . . . . . . . . . . . . . . . . . . . . . 96

Table 2 and 3

**Level Income Option Factors** . . . . . . . . . . . . . . . . . . . . . . . 107

## SHEET METAL WORKERS' LOCAL NO. 73
## PENSION PLAN

### ARTICLE 5
### HUSBAND-AND-WIFE AND PRERETIREMENT SURVIVING SPOUSE PENSIONS

**Section 5.1.  General**

a.  If the Annuity Starting Date of a pension payable to a married Participant is after December 31, 1984, the benefit is to be paid as a Husband-and-Wife Pension unless:

    i.  the Participant and Spouse elect otherwise in accordance with Subsection 5.2(e);

    ii.  the Spouse is not a Qualified Spouse as defined below; or

    iii.  the benefit is payable only in a single sum under Section 6.21.

b.  If a married Participant with a right to a pension, whether immediate or deferred dies after August 22, 1984 but before his pension payments have started, a Preretirement Surviving Spouse Pension shall be payable as described in Section 5.3.

Except as provided in Section 6.21, benefits will be paid in the form of the 50% Husband-and-Wife Pension unless another form is elected in accordance with the terms of the Plan and procedures adopted by the Trustees.

c.  For purposes of the Plan, a Spouse is a person to whom a Participant is considered married under applicable law and, if and to the extent provided in a Qualified Domestic Relations Order (within the meaning of Sections 206(d) of ERISA and 414(p) of the Internal Revenue Code), a Participant's former Spouse.

51

## SHEET METAL WORKERS' LOCAL NO. 73
### PENSION PLAN

d.   To be eligible to receive the survivor's pension in accordance with a Husband-and-Wife Pension or a Preretirement Surviving Spouse Pension, the Spouse must be a "Qualified Spouse." A Spouse is a Qualified Spouse if the Participant and Spouse were married on the date of the Participant's death and had been married throughout the year ending with the date the Participant's pension payments start or, if earlier, the date of death. A Spouse is also a Qualified Spouse if the Participant and Spouse became married within the year immediately preceding the Annuity Starting Date of the Participant's pension and they were married for at least a year before his death.

## Section 5.2.  Husband-and-Wife Pension at Retirement

a.   The pension of a Participant who is married to a Qualified Spouse on the Annuity Starting Date of the Participant's pension shall be paid in the form of a Husband-and-Wife Pension, unless a valid waiver of that form of payment has been filed with the Plan.

b.   A Husband-and-Wife Pension means that the Participant will receive an adjusted monthly amount for life and, if the Participant dies before his Qualified Spouse, the latter will receive a monthly benefit for her lifetime of 50% of the Participant's adjusted monthly amount. The Participant's monthly amount shall be a percentage of the full monthly amount otherwise payable as a single-life pension (after adjustment, if any, for early retirement) as follows:

i.   If the Participant's pension is not a Disability Pension, the percentage shall be 90% plus 0.4% for each full year that the Spouse is older than the Participant or minus 0.4% for each full year that the Spouse is younger than the Participant.

52

## SHEET METAL WORKERS' LOCAL NO. 73
## PENSION PLAN

    ii.    If the Participant's pension is a Disability Pension, the percentage shall be 82% plus 0.4% for each full year that the Spouse is older than the Participant or minus 0.4% for each full year that the Spouse is younger than the Participant.

    iii.    In no event should the factor determined above exceed 99%.

c.    A Husband-and-Wife Pension, once payments have begun, may not be revoked nor the Pensioner's benefits increased by reason of subsequent divorce or death of the Spouse before that of the Participant.

d.    A retiring Participant shall be advised by the Trustees of the effect of payment on the basis of the Husband-and-Wife Pension, including a comparison of the full single-life pension amount and of the adjusted amount.

e.    The Husband-and-Wife Pension may be waived in favor of another form of distribution only as follows:

    i.    The Participant files the waiver in writing in such form as the Trustees may prescribe, and the Participant's Spouse acknowledges the effect of the waiver and consents to it in writing, witnessed by a notary public.

    ii.    The Participant establishes to the satisfaction of the Trustees that:

        A.    he or she is not married;

        B.    the Spouse whose consent would be required cannot be located; or

## SHEET METAL WORKERS' LOCAL NO. 73
### PENSION PLAN

C.    consent of the Spouse cannot be obtained because of extenuating circumstances, as provided in Internal Revenue Service regulations.

iii.    A waiver of the Husband-and-Wife Pension is valid only if a written explanation of its effect has been provided to the Participant no earlier than 90 days before the Annuity Starting Date and no later than 30 days before the Annuity Starting Date. However, if the Participant, after receiving such written explanation, elects a form of distribution with his Spouse's written consent, the Annuity Starting Date may be less than 30 days after the written explanation was provided to the Participant if:

(A)    the written explanation clearly indicates that the Participant and Spouse have a right to at least 30 days to consider whether to waive the Husband-and-Wife Pension;

(B)    the Participant is permitted to revoke any election until the later of his Annuity Starting Date and expiration of the seven-day period beginning the day after the written explanation in this Section 5.2 is provided to the Participant; and

(C)    pension payments to the Participant do not begin before expiration of the seven-day period beginning the day after the written explanation in this Section 5.2 is provided to the Participant.

iv.    A Spouse's consent to a waiver of the Husband-and-Wife Pension shall be effective only with respect to that Spouse, and shall be irrevocable unless the Participant revokes the waiver to which it relates.

54

Exhibit 7

# SHEET METAL WORKERS' LOCAL NO. 73

# PENSION PLAN

## Amended and Restated as of January 1, 2009

SECTION 3.12. PROOF OF TOTAL AND PERMANENT DISABILITY ................................................19
SECTION 3.13. EARNINGS BY A DISABILITY PENSIONER.........................................................19
SECTION 3.14. CESSATION OF TOTAL AND PERMANENT DISABILITY. .....................................20
SECTION 3.15. NON-DUPLICATION WITH MILITARY PENSION. ...............................................20
SECTION 3.16. RULE OF 95 PENSION—ELIGIBILITY. ...........................................................21
SECTION 3.17. RULE OF 95 PENSION—AMOUNT. ...............................................................21
SECTION 3.18. DEATH BENEFIT—PRE-RETIREMENT LUMP SUM. ..........................................21
SECTION 3.19. DEATH BENEFIT—POST-RETIREMENT. ..........................................................22
SECTION 3.20. OPTIONAL FORMS OF PAYMENT. ..................................................................23
SECTION 3.21. NON-DUPLICATION AND IRREVOCABILITY ......................................................28
SECTION 3.22. APPLICATION OF BENEFIT INCREASES. ..........................................................29
SECTION 3.23. ROUNDING OF BENEFIT AMOUNT. ................................................................30
SECTION 3.24. SUPPLEMENTAL PENSION AMOUNT. ..............................................................30

**ARTICLE 4 PENSION CREDITS AND YEARS OF VESTING SERVICE** ................................**32**

SECTION 4.1. PENSION CREDITS DURING THE CONTRIBUTION PERIOD. ..................................32
SECTION 4.2. LOSS OF PENSION CREDITS BEFORE THE CONTRIBUTION PERIOD. .....................36
SECTION 4.3. YEARS OF VESTING SERVICE. .......................................................................37
SECTION 4.4. BREAKS IN SERVICE.....................................................................................37
SECTION 4.5. GRACE PERIODS. .........................................................................................39

**ARTICLE 5 HUSBAND-AND-WIFE AND PRERETIREMENT SURVIVING SPOUSE PENSIONS**............**42**

SECTION 5.1. GENERAL. ..................................................................................................42
SECTION 5.2. HUSBAND-AND-WIFE PENSION AT RETIREMENT. ............................................43
SECTION 5.3. PRERETIREMENT SURVIVING SPOUSE PENSIONS. ............................................45
SECTION 5.4. RELATION TO A QUALIFIED DOMESTIC RELATIONS ORDER. ...............................48
SECTION 5.5. TRUSTEES' RELIANCE. ................................................................................48
SECTION 5.6. BENEFIT ADJUSTMENTS IF PAYMENT OF PRERETIREMENT SURVIVING
SPOUSE PENSION IS POSTPONED. .................................................................48
SECTION 5.7. SURVIVOR BENEFIT LIMITATIONS. .................................................................48

**ARTICLE 6 APPLICATIONS, BENEFIT PAYMENTS AND RETIREMENT** ...................................**49**

SECTION 6.1. APPLICATIONS. ...........................................................................................49
SECTION 6.2. INFORMATION AND PROOF...........................................................................49
SECTION 6.3. PROVISIONS APPLICABLE TO ALL BENEFIT CLAIMS. .........................................49
SECTION 6.4 ACTION OF TRUSTEES FOR CLAIMS OTHER THAN DISABILITY PENSIONS ...............51
SECTION 6.5 ACTION OF TRUSTEES FOR DISABILITY PENSIONS. ............................................53
SECTION 6.6. BENEFIT PAYMENTS GENERALLY...................................................................56
SECTION 6.7. RETIREMENT. .............................................................................................58
SECTION 6.8. SUSPENSION OF BENEFITS. ...........................................................................59
SECTION 6.9. SUSPENSION PERIOD ADJUSTMENT................................................................63
SECTION 6.10. BENEFIT PAYMENTS FOLLOWING SUSPENSION. ..............................................64
SECTION 6.11. VESTED STATUS OR NONFORFEITABILITY. ......................................................66
SECTION 6.12. NON-DUPLICATION WITH ACCIDENT AND SICKNESS BENEFITS............................67
SECTION 6.13. INCOMPETENCE OR INCAPACITY OF A PENSIONER OR BENEFICIARY.....................67
SECTION 6.14. NOTIFICATION OF CONTINUED EXISTENCE. .....................................................67
SECTION 6.15. DESIGNATION OF BENEFICIARY. ...................................................................67
SECTION 6.16. FAILURE TO DESIGNATE A BENEFICIARY. ........................................................68
SECTION 6.17. NON-ASSIGNMENT OF BENEFITS. ..................................................................68
SECTION 6.18. NO RIGHTS TO ASSETS. ...............................................................................69
SECTION 6.19. MERGERS...................................................................................................69

ii

SECTION 12.2.     TOP-HEAVY PLAN REQUIREMENTS. ................................................91
SECTION 12.3.     DETERMINATION OF TOP-HEAVY STATUS. ...................................92
SECTION 12.4.     TOP-HEAVY VESTING. ..............................................................95
SECTION 12.5.     TOP-HEAVY BENEFIT REQUIREMENTS..........................................96
SECTION 12.6.     MODIFICATION OF TOP-HEAVY RULES UNDER EGTRRA. ..................97

**ARTICLE 13      MINIMUM DISTRIBUTIONS.................................................99**

SECTION 13.1.     GENERAL RULES. .....................................................................99
SECTION 13.2.     TIME AND MANNER OF DISTRIBUTION...........................................99
SECTION 13.3.     DETERMINATION OF AMOUNT TO BE DISTRIBUTED EACH YEAR. ..........100
SECTION 13.4.     REQUIREMENTS FOR ANNUITY DISTRIBUTION THAT COMMENCE DURING PARTICIPANT'S LIFETIME. ................................................................102
SECTION 13.5.     REQUIREMENTS FOR MINIMUM DISTRIBUTIONS WHERE PARTICIPANT DIES BEFORE DATE DISTRIBUTIONS BEGIN..............................................103
SECTION 13.6.     DEFINITIONS. .........................................................................103

**TABLE 1     ANNUITY FACTORS FOR CONVERTING PENSION PAYMENTS PRIOR TO SUSPENSION OF BENEFITS....................................................................105**

**SIGNATURE PAGE .................................................................................106**

SECTION 6.20.   SMALL BENEFIT CASH-OUTS....................................................................70
SECTION 6.21.   FACILITY OF PAYMENT.........................................................................70
SECTION 6.22.   THIRTEENTH PENSION CHECKS................................................................71
SECTION 6.23    OVERPAYMENTS AND UNDERPAYMENTS ....................................................71

## ARTICLE 7 MISCELLANEOUS................................................................................72

SECTION 7.1.    NON-REVERSION.................................................................................72
SECTION 7.2.    LIMITATION OF LIABILITY......................................................................72
SECTION 7.3.    NEW EMPLOYERS................................................................................72
SECTION 7.4.    TERMINATED EMPLOYER........................................................................73
SECTION 7.5.    TERMINATION....................................................................................74
SECTION 7.6.    BUILDING AND CONSTRUCTION INDUSTRY EXEMPTION ..................................75

## ARTICLE 8 AMENDMENT......................................................................................76

SECTION 8.1.    AMENDMENT.....................................................................................76

## ARTICLE 9 PRO-RATA (RECIPROCAL) PENSIONS ..................................................77

SECTION 9.1.    PURPOSE..........................................................................................77
SECTION 9.2.    HOME FUND......................................................................................77
SECTION 9.3.    RELATED PLANS.................................................................................77
SECTION 9.4.    RELATED PENSION CREDITS....................................................................77
SECTION 9.5.    COMBINED PENSION CREDIT...................................................................78
SECTION 9.6.    ELIGIBILITY.......................................................................................78
SECTION 9.7.    BREAKS IN SERVICE.............................................................................78
SECTION 9.8.    NON-DUPLICATION.............................................................................78
SECTION 9.9.    PRO-RATA PENSION AMOUNT.................................................................79
SECTION 9.10.   PAYMENT OF PRO-RATA PENSION.............................................................79
SECTION 9.11.   APPLICATION TO PENSION BENEFITS ONLY..................................................79
SECTION 9.12.   LIMITED TRANSFER OF CONTRIBUTIONS......................................................79

## ARTICLE 10    ROLLOVERS ..................................................................................80

SECTION 10.1.   ROLLOVERS.......................................................................................80
SECTION 10.2.   DEFINITIONS......................................................................................80

## ARTICLE 11    MAXIMUM BENEFITS .......................................................................82

SECTION 11.1.   GENERAL RULE...................................................................................82
SECTION 11.2.   ADJUSTMENT OF DOLLAR LIMIT FOR EARLY OR LATE RETIREMENT.......................83
SECTION 11.3.   ADJUSTMENT FOR OPTIONAL PAYMENT FORM...............................................85
SECTION 11.4.   PLAN AGGREGATION.............................................................................85
SECTION 11.5.   PHASE-IN OVER YEARS OF SERVICE...........................................................86
SECTION 11.6.   PHASE-IN OVER YEARS OF PARTICIPATION..................................................86
SECTION 11.7.   LIMITATION YEAR...............................................................................86
SECTION 11.8.   PROTECTION OF PRIOR BENEFITS..............................................................86
SECTION 11.9.   INTERPRETATION OR DEFINITION OF OTHER TERMS.......................................87
SECTION 11.10   BENEFIT LIMITATIONS UNDER EGTRRA.......................................................87

## ARTICLE 12    TOP-HEAVY PROVISIONS...................................................................91

SECTION 12.1.   DEFINITIONS......................................................................................91

iii

# Table of Contents

**ARTICLE 1 DEFINITIONS** ..................................................................................................1

SECTION 1.1.    ACTUARIAL PRESENT VALUE. ...........................................................1
SECTION 1.2.    ANNUITY STARTING DATE OR EFFECTIVE DATE. ...........................3
SECTION 1.3.    BENEFICIARY. ...................................................................................3
SECTION 1.4.    CALENDAR YEAR. .............................................................................4
SECTION 1.5.    COLLECTIVE BARGAINING AGREEMENT OR AGREEMENT. ...........4
SECTION 1.6.    COMPENSATION. ...............................................................................4
SECTION 1.7.    CONTINUOUS EMPLOYMENT. ...........................................................4
SECTION 1.8.    CONTRIBUTING EMPLOYER OR EMPLOYER. ...................................4
SECTION 1.9.    CONTRIBUTION PERIOD. ...................................................................5
SECTION 1.10.    COVERED EMPLOYMENT. ..................................................................5
SECTION 1.11.    EMPLOYEE. .......................................................................................5
SECTION 1.12.    FISCAL YEAR. ...................................................................................5
SECTION 1.13.    GENDER. ...........................................................................................6
SECTION 1.14.    PENSION PLAN OR PLAN. ..................................................................6
SECTION 1.15.    PARTICIPANT. ...................................................................................6
SECTION 1.16.    PENSION FUND OR FUND. .................................................................6
SECTION 1.17.    PENSIONER. .......................................................................................6
SECTION 1.18.    NORMAL RETIREMENT AGE. .............................................................6
SECTION 1.19.    REQUIRED BEGINNING DATE. ...........................................................6
SECTION 1.20.    SHEET METAL INDUSTRY. .................................................................7
SECTION 1.21.    TRUSTEES. ........................................................................................7
SECTION 1.22.    TRUST AGREEMENT. .........................................................................7
SECTION 1.23.    UNION. .............................................................................................7
SECTION 1.24.    WORK. ..............................................................................................7
SECTION 1.25.    YEAR OF PARTICIPATION. ................................................................8
SECTION 1.26.    OTHER TERMS. .................................................................................8

**ARTICLE 2 PARTICIPATION** .............................................................................................10

SECTION 2.1.    PURPOSE. .......................................................................................10
SECTION 2.2.    PARTICIPATION. ..............................................................................10
SECTION 2.3.    TERMINATION OF PARTICIPATION. .................................................10
SECTION 2.4.    REINSTATEMENT OF PARTICIPATION. ............................................10

**ARTICLE 3 PENSION ELIGIBILITY AND AMOUNTS** ...........................................................11

SECTION 3.1.    GENERAL. .......................................................................................11
SECTION 3.2.    NORMAL RETIREMENT AGE PENSION—ELIGIBILITY AND AMOUNT. ..11
SECTION 3.3.    REGULAR PENSION—ELIGIBILITY. .................................................11
SECTION 3.4.    REGULAR PENSION—AMOUNT. ......................................................12
SECTION 3.5.    EARLY RETIREMENT PENSION—ELIGIBILITY. .................................14
SECTION 3.6.    EARLY RETIREMENT PENSION—AMOUNT. ......................................15
SECTION 3.7.    DEFERRED PENSION—ELIGIBILITY. .................................................16
SECTION 3.8.    DEFERRED PENSION—AMOUNT. ......................................................17
SECTION 3.9.    DISABILITY PENSION—ELIGIBILITY AND COMMENCEMENT. ...........17
SECTION 3.10.    DISABILITY PENSION—AMOUNT. ....................................................18
SECTION 3.11.    DEFINITION OF TOTAL AND PERMANENT DISABILITY. ....................18

i

**Section 5.2.**     **Husband-and-Wife Pension at Retirement.**

(a)     The pension of a Participant who is married to a Qualified Spouse on the Annuity Starting Date of the Participant's pension shall be paid in the form of a Husband-and-Wife Pension, unless a valid waiver of that form of payment has been filed with the Plan.

(b)     A Husband-and-Wife Pension means that the Participant will receive an adjusted monthly amount for life and, if the Participant dies before his Qualified Spouse, the latter will receive a monthly benefit for her lifetime of 50% of the Participant's adjusted monthly amount. The Participant's monthly amount shall be a percentage of the full monthly amount otherwise payable as a single-life pension (after adjustment, if any, for early retirement) as follows:

      (i)     If the Participant's pension is not a Disability Pension, the percentage shall be 90% plus 0.4% for each full year that the Spouse is older than the Participant or minus 0.4% for each full year that the Spouse is younger than the Participant.

      (ii)     If the Participant's pension is a Disability Pension, the percentage shall be 82% plus 0.4% for each full year that the Spouse is older than the Participant or minus 0.4% for each full year that the Spouse is younger than the Participant.

      (iii)     In no event should the factor determined above exceed 99%.

(c)     A Husband-and-Wife Pension, once payments have begun, may not be revoked nor the Pensioner's benefits increased by reason of subsequent divorce or death of the Spouse before that of the Participant. If the Participant has elected a Husband-and-Wife Pension, with that application approved by the Trustees, but the spouse died before benefit payments have begun, and the Participant has not ceased working, the Participant's election for a Husband-and-Wife Pension is null and void, and the Participant may elect a single life benefit.

(d)     A retiring Participant shall be advised by the Trustees of the effect of payment on the basis of the Husband-and-Wife Pension, including a comparison of the full single-life pension amount and of the adjusted amount. A Participant and Spouse, if any, will be provided the relative values of all optional benefit forms and a notice explaining the right to defer any distributions and the consequences of failing to defer.

Article 5

(e)     The Husband-and-Wife Pension may be waived in favor of another form of distribution only as follows:

    (i)     The Participant files the waiver in writing in such form as the Trustees may prescribe, and the Participant's Spouse acknowledges the effect of the waiver and consents to it in writing, witnessed by a notary public.

    (ii)    The Participant establishes to the satisfaction of the Trustees that:

        (A)     He or she is not married;

        (B)     The Spouse whose consent would be required cannot be located; or

        (C)     Consent of the Spouse cannot be obtained because of extenuating circumstances, as provided in Internal Revenue Service regulations.

    (iii)   A waiver of the Husband-and-Wife Pension is valid only if a written explanation of its effect has been provided to the Participant no earlier than 90 days before the Annuity Starting Date and no later than 30 days before the Annuity Starting Date. However, if the Participant, after receiving such written explanation, elects a form of distribution with his Spouse's written consent, the Annuity Starting Date may be less than 30 days after the written explanation was provided to the Participant if:

        (A)     The written explanation clearly indicates that the Participant and Spouse have a right to at least 30 days to consider whether to waive the Husband-and-Wife Pension;

        (B)     The Participant is permitted to revoke any election until the later of his Annuity Starting Date and expiration of the seven-day period beginning the day after the written explanation in this Section 5.2 is provided to the Participant; and

        (C)     Pension payments to the Participant do not begin before expiration of the seven-day period beginning the day after the written explanation in this Section 5.2 is provided to the Participant.

    (iv)    A Spouse's consent to a waiver of the Husband-and-Wife Pension shall be effective only with respect to that Spouse, and shall be irrevocable unless the Participant revokes the waiver to which it relates.

# Exhibit 8

SHEET METAL WORKERS'
*International Association ∘ Local Union No. 73*

4530 Roosevelt Road | Hillside, Illinois 60162 | 708.449.7373 | FAX 708.449.7333



A HIGHER STANDARD
CHICAGO
SMACNA

Welfare and Pension Funds

July 30, 2014

ANTHONY CINGRANI
3963 CALHOUN ST
GARY, IN 46408

**RE: Sheet Metal Workers Local Union No. 73 Pension Fund (the "Plan")**
**Pension Reduction Due to QDRO**

Dear Mr. Cingrani:

We are writing to explain the impact on your pension amount of the qualified domestic relations order (the "QDRO") that was approved in 2002, which awarded a portion of your benefit under the Plan to your deceased ex-spouse, Deborah Cingrani.

We understand that you have submitted a pension application and intend to retire soon. As you may already be aware, your monthly pension amount is subject to reduction pursuant to the QDRO. Although Ms. Cingrani is now deceased, the QDRO, which assigned her a portion of your benefit, was silent as to the fate of her benefit in the event of her death before commencement of her benefit payments. When a QDRO is silent on any particular issue, the Plan applies the default rule for that issue under the Plan's QDRO Procedures, which includes its model QDRO (see Item 12 of enclosed Model QDRO). Consistent with the Plan's default rule for this issue, Ms. Cingrani's benefit reverted to the Plan upon her death because she had not yet commenced her benefits. Unfortunately, neither the Plan Document nor the Plan's QDRO procedures permit adding Ms. Cingrani's benefit to yours.

Please note that at this time we are not treating your inquiry regarding you pension amount as a claim for benefits under the Employee Retirement Income Security Act of 1974. As such, this correspondence only provides general information regarding your inquiry, and is not a determination of your benefits under the Plan. When you elect to retire, your application will go before the Pension Committee, which will make a decision regarding your pension. If you disagree with the Committee's decision, including your pension amount, you will have an opportunity to appeal the Committee's decision at that time.

Please do not hesitate to contact me with additional questions.

Sincerely,

Kristine Lofquist
Pension Manager

10. If the Participant dies before his or her annuity starting date and before the Alternate Payee's benefit assigned by this Order is distributed (but after the Order is determined to be qualified), and the full assigned benefit remains payable to the Alternate Payee under the terms of the Plan, then the benefit assigned to the Alternate Payee is unaffected by the Participant's death and is payable when otherwise provided under this Order and the Plan. If the full assigned benefit does not remain payable to the Alternate Payee, such as if the Participant benefit covered by this Order is converted into a qualified pre-retirement survivor annuity or a joint and survivor annuity, then the Alternate Payee shall be treated as a surviving spouse of the Participant for purposes of the qualified pre-retirement survivor annuity or a joint and survivor annuity with respect to the Participant's benefit earned under the Plan to the extent necessary to enable the Alternate Payee to receive the benefits described in paragraph 7 above.

11. The benefit payable subject to this Order shall be adjusted as necessary so the Plan is not required to provide benefits to the Alternate Payee and the Participant and/or another alternate payee, determined based on actuarially equivalent value, that exceed the Participant' total Plan benefits. If, as a result of this Order, more than one individual is to be treated as a surviving spouse of the Participant, the total amount to be paid in the qualified pre-retirement survivor annuity or joint and survivor annuity may not exceed the amount that would be paid if there were only one surviving spouse.

12. [For Separate Interest Orders Only] The Alternate Payee may designate a beneficiary to receive any death benefits payable under the Plan after the Alternate Payee's death. Upon the Alternate Payee's death after benefit commencement but before all benefits are distributed, the form of benefit selected by the Alternate Payee shall determine whether any amounts are owed to any beneficiary upon the Alternate Payee's death. Any such beneficiary designation shall be made without regard to any designation by the Participant of a beneficiary with respect to the Participant's interest. If the beneficiary predeceases the Alternate Payee or the Alternate Payee fails to designate a beneficiary, the benefit will be paid to the default beneficiary as provided in the Plan. Upon the Alternate Payee's death before benefit payments commence to him or her, the Alternate Payee's assigned benefit will be forfeited and will revert to the [Plan/Participant].

13. If a payment of any dollar amounts is paid in error to either party to this Order, then the receiving party shall immediately return it to the Plan.

14. The Alternate Payee shall include in his or her gross income for his or her taxable years of receipt all taxable benefits received by the Alternate Payee pursuant to this Order, and the Participant shall not include such benefits in the Participant's gross income for such taxable years. The Alternate Payee shall be treated as the distributee under Code Sections 72 and 402 of any payment or distribution made to the Alternate Payee pursuant to this Order. The Participant's investment in the Plan will be shared proportionately by the Alternate Payee and the Participant as provided in Code Section 72(m)(10).

15. Nothing contained in this Order or any amendment hereto shall be construed to require the Plan or the Plan Administrator:

(a) to provide any type or form of benefit or any option not otherwise available under the Plan;

(b) to provide increased benefits (determined based on actuarially equivalent value); or

(c) to pay any benefits to the Alternate Payee that are required to be paid to another alternate payee under another order previously determined by the Plan Administrator to be a QDRO.

1042774.4

F-4

Exhibit 9

10.     If the Participant dies before his or her annuity starting date and before the Alternate Payee's benefit assigned by this Order is distributed (but after the Order is determined to be qualified), and the full assigned benefit remains payable to the Alternate Payee under the terms of the Plan, then the benefit assigned to the Alternate Payee is unaffected by the Participant's death and is payable when otherwise provided under this Order and the Plan. If the full assigned benefit does not remain payable to the Alternate Payee, such as if the Participant benefit covered by this Order is converted into a qualified pre-retirement survivor annuity or a joint and survivor annuity, then the Alternate Payee shall be treated as a surviving spouse of the Participant for purposes of the qualified pre-retirement survivor annuity or a joint and survivor annuity with respect to the Participant's benefit earned under the Plan to the extent necessary to enable the Alternate Payee to receive the benefits described in paragraph 7 above.

11.     The benefit payable subject to this Order shall be adjusted as necessary so the Plan is not required to provide benefits to the Alternate Payee and the Participant and/or another alternate payee, determined based on actuarially equivalent value, that exceed the Participant' total Plan benefits. If, as a result of this Order, more than one individual is to be treated as a surviving spouse of the Participant, the total amount to be paid in the qualified pre-retirement survivor annuity or joint and survivor annuity may not exceed the amount that would be paid if there were only one surviving spouse.

12.     **[For Separate Interest Orders Only]** The Alternate Payee may designate a beneficiary to receive any death benefits payable under the Plan after the Alternate Payee's death. Upon the Alternate Payee's death after benefit commencement but before all benefits are distributed, the form of benefit selected by the Alternate Payee shall determine whether any amounts are owed to any beneficiary upon the Alternate Payee's death. Any such beneficiary designation shall be made without regard to any designation by the Participant of a beneficiary with respect to the Participant's interest. If the beneficiary predeceases the Alternate Payee or the Alternate Payee fails to designate a beneficiary, the benefit will be paid to the default beneficiary as provided in the Plan. Upon the Alternate Payee's death before benefit payments commence to him or her, the Alternate Payee's assigned benefit will be forfeited and will revert to the **[Plan/Participant]**.

13.     If a payment of any dollar amounts is paid in error to either party to this Order, then the receiving party shall immediately return it to the Plan.

14.     The Alternate Payee shall include in his or her gross income for his or her taxable years of receipt all taxable benefits received by the Alternate Payee pursuant to this Order, and the Participant shall not include such benefits in the Participant's gross income for such taxable years. The Alternate Payee shall be treated as the distributee under Code Sections 72 and 402 of any payment or distribution made to the Alternate Payee pursuant to this Order. The Participant's investment in the Plan will be shared proportionately by the Alternate Payee and the Participant as provided in Code Section 72(m)(10).

15.     Nothing contained in this Order or any amendment hereto shall be construed to require the Plan or the Plan Administrator:

(a)     to provide any type or form of benefit or any option not otherwise available under the Plan;

(b)     to provide increased benefits (determined based on actuarially equivalent value); or

(c)     to pay any benefits to the Alternate Payee that are required to be paid to another alternate payee under another order previously determined by the Plan Administrator to be a QDRO.

1042774.4

F-4

Exhibit 10

ATTY. NO. 11449

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF | ) | |
| | ) | |
| DEBORAH A. CINGRANI, | ) | |
| | ) | |
| Petitioner, | ) | No. 02 D6 30618 |
| | ) | Judge Coleman |
| and | ) | Calendar Z |
| | ) | |
| ANTHONY CINGRANI, JR., | ) | |
| | ) | |
| Respondent. | ) | |

## AMENDED QUALIFIED DOMESTIC RELATIONS ORDER

This amended order is intended to be a qualified domestic relations order (the "QDRO"), as that term is defined in section 206(d) of the *Employee Retirement Income Security Act of 1974*, as amended ("ERISA") and section 414(p) of the *Internal Revenue Code* of 1986, as amended (the "Code"). This QDRO is granted in accordance with the *Illinois Marriage and Dissolution of Marriage Act*, which relates to marital property rights, child support, and/or spousal support between spouses and former spouses in matrimonial actions and in accordance with the intention and agreement of the parties; accordingly, the court finds as follows:

1. This amended QDRO replaces the QDRO entered on May 16, 2002 to provide for the disposition of the Alternate Payee's benefits upon her predeceasing the Participant which in fact occurred on February 17, 2011.

2. Notice has been given to all interested parties.

3. This amended QDRO shall apply to the pension benefits under the Sheet Metal Workers' Local No. 73 Pension Plan and any ancillary benefits plan inuring to the benefit of the Alternate Payee and the Participant.

4. The Plan / QDRO Administrators are Joseph Ohm, Kristine Lofquist and Karen Meifert whose collective address is:

Sheet Metal Workers' International Association
Local No. 73 Pension Fund
4530 Roosevelt Road
Hillside, IL 60162
Telephone: 708-449-7373
Facsimile: 708-449-7333.

5. The Participant, Anthony Cingrani, Jr., resides at 3963 Calhoun Street in Gary, Indians 46408 and the Alternate Payee, Deborah A. Cingrani, last resided at 320 Circlegate, New Lenox.

Illinois 60451. The last four numbers of their respective social security numbers are 6259 and 7029. They were married on May 1, 1982 and their marriage was dissolved through a judgment for dissolution of marriage entered on May 16, 2002.

6. The Alternate Payee was assigned fifty percent of the marital pension benefits payable to the Participant, defined as the Participant's accrued vested benefits from the date of the marriage, May 1, 1982, to the date of the dissolution judgment, May 16, 2002: the Plan administrator considering only the present value of the Participant's accrued benefits, determined using the actuarial equivalence factors specified for conversion of optional forms of benefits, and not the present value of any employer subsidy for early retirement which might or might not become payable to the Participant.

7. The Alternate Payee could make an election of her fifty percent share of benefits as soon as administratively feasible: having her benefits paid in any form through which benefits might be paid to the Participant, except a joint and survivor annuity with respect to the Alternate Payee and a subsequent spouse in regard to the pension plan. The Alternate Payee could make an election after the Participant attained the "earliest retirement age" (as defined in Code Section 414(p)(4)(B) ), or when the Participant commenced a disability pension after the Plan Administrator had accepted the order as a qualified domestic relations order. If the Alternate Payee so expressly elected, benefits should be paid as soon as administratively feasible after the date on which the Plan Administrator determined that this order was qualified and established any necessary Alternate Payee's account, or at the earliest date permitted. The Alternate Payee could not delay the commencement of her pension benefits beyond the Participant's "required beginning date" and once the Alternate Payee's benefits were distributed to her under the QDRO she would have no further interest in the remainder of the Participant's benefits. Nevertheless, benefits payable under this QDRO shall be adjusted, as necessary, so that the pension plan will not be required to provide benefits to the Alternate Payee, the Participant and another alternate payee, determined and based upon actuarially equivalent value, which exceed the Participant's total plan benefits.

8. The Alternate Payee may designate a beneficiary to receive and death benefits payable under the Plan after her death. Upon the death of the Alternate Payee, after any benefit commencement but before all benefits are distributed, the form of the benefit selected by the Alternate Payee shall determine whether any amounts are owed to any beneficiary. Any such beneficiary designation shall be made without regard to any designation by the Participant of a beneficiary in regard to the Participant's interest. If the beneficiary predeceases the Alternate Payee or the Alternate Payee fails to designate a beneficiary, the benefit will be paid to the default beneficiary as provided by the Plan. However, in the event that the Alternate Payee should predecease the Participant [as stated above], and before any benefit payments were made to the Alternate Payee, all of the Alternate Payee's assigned benefits and rights thereto shall revert entirely to the Participant and the Participant shall therefore receive his full monthly retirement benefit and all other benefits afforded him.

9. The Alternate Payee shall include in her gross income for her taxable years receipt of all taxable benefits received pursuant to this QDRO and the Participant shall not include such benefits in his gross income for such taxable years. The Alternate Payee shall be treated as the distributee under Code Sections 72 and 402 of any payment or distribution made to the Alternate Payee pursuant to this QDRO. The Participant's investment in the plan will be shared

2

proportionately by the Alternate Payee and the Participant as provided in Code Section 72(m)(10). Otherwise, the parties to this QDRO or any amendment thereof intend that it comply with the applicable provisions of *ERISA* and the Code and that it not be construed to provide any type or form of benefit or any option not otherwise available under the plan or to provide increased benefits determined and based upon actuarially equivalent value or pay benefits to the Alternate Payee which are required to be paid to another qualified alternate payee.

10. This court reserves jurisdiction over the parties and the Plan until such time as the obligations of the Plan to the Participant and Alternate Payee under this QDRO, or any amendment thereof, have been fully paid and discharged. Furthermore, this court reserves jurisdiction to further amend this QDRO to establish or maintain its status as a QDRO under *ERISA* and the Code.

WHEREFORE, IT IS SO ORDERED BY THE COURT ON THIS DATE:

ENTER:

_____

Honorable Judge Bonita Coleman

Judge Bonita Coleman

FEB 18 2015

Circuit Court – 2046

Roderick J. Bergin
Roderick J. Bergin & Associates
427 Ferndale Road
Suite 300
Glenview, IL 60025
847-501-4500

Daniel Cummings
Rothschild, Barry & Myers, LLP
150 South Wacker Drive
Suite 3025
Chicago, IL 60606
312-372-2345



**FedEx Billing Online**

---

## Tracking ID Details                                                    Back

### Tracking ID Summary                                          Help Hide

#### Billing Information                                | Messages

Tracking ID no.   < Prev   773930295199   ▼   Next >

| | | Distance Based Pricing, Zone 2 |
Invoice no.              5-095-08845           Fuel Surcharge - FedEx has applied a fuel surcharg Read More..
Account no.              0605-3095-5
Ship date                06/26/2015
Invoice date             07/14/2015
Due date                 07/29/2015
**Tracking ID Balance due**      **$16.19**
Status                   Open

View Invoice History
View signature proof of delivery

---

### Transaction Details                                          Help Hide

#### Sender Information                          | #### Recipient Information

Anthony Sutton                                   William Galati
                                                 Galati Law Offices
150 S. Wacker Dr.                                15255 S. 94th Avenue
CHICAGO IL 60606
US                                               ORLAND PARK IL 60462
                                                 US

#### Shipment Details                            | #### Charges

| Ship date | 06/26/2015 | | Transportation Charge | 19.90 |
| Payment type | Shipper | | Fuel Surcharge | 0.47 |
| Service type | FedEx Standard Overnight | | Weekday Delivery | 0.00 |
| Zone | 02 | | Discount | -4.18 |
| Package type | FedEx Envelope | | **Total charges** | **$16.19** |
| Weight | 0.00 lbs | | Enter promo code | |
| Pieces | 1 | | | |
| Meter No. | 8124317 | | | |
| Declared value | $0.00 | | | |

#### Original Reference                          | #### Updated Reference Edit

| Customer reference no. | NO REFERENCE INFORMATION | | Customer reference no. | |
| Department no. | | | Department no. | |
| Reference #2 | | | Reference #2 | |
| Reference #3 | | | Reference #3 | |

#### Proof of Delivery                           | #### Cost Allocation Reference Edit

| Delivery date | 06/29/2015 11:34 | | Cost allocation | |
| Service area code | A2 | | Shipment Notes | |
| Signed by | D.DAVIS | | | |
| View signature proof of delivery | | | | |

Back