**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ANTHONY CINGRANI, JR.,** | |
| Plaintiff, | Case No. 15 C 6430 |
| v. | Judge Harry D. Leinenweber |
| **SHEET METAL WORKERS' LOCAL NO. 73 PENSON FUND,** | |
| Defendant. | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

## I. <u>BACKGROUND</u>

The Plaintiff, Anthony Cingrani, Jr. ("Cingrani" or "Plaintiff"), worked as a sheet metal worker starting in 1978. He was married to Deborah Cingrani ("Deborah"), from whom he was divorced on May 16, 2002. As part of the divorce settlement, a Qualified Domestic Relations Order ("QDRO") was entered by the Circuit Court of Cook County on May 16, 2002. The intent of this Order was to assign 50% of Cingrani's vested interests in three pension funds to Deborah. One of the three pension funds is at issue in this case: the Local 73 Pension Fund (the "Fund"). The QDRO did not distinguish between the three funds but treated them the same. It also did not provide for the possibility that Deborah might predecease Cingrani. The

Local 73 Pension Fund was a defined benefit plan in the form of a pension that commenced upon Cingrani's retirement and was to end with his death.

Deborah unfortunately passed away on February 17, 2011 which was prior to Cingrani taking retirement, so she never received any benefits. There were no amendments made to the QDRO prior to her death. In 2014 Cingrani decided to take retirement as of first of the year 2015 and applied to the Fund for his pension. On July 30, 2014, the Fund advised Cingrani that, because of the assignment of 50% of his pension to Deborah by the QDRO, he would only be entitled to 50% of his pension, the remaining 50% was to revert to the Fund due to Deborah's death. Since the QDRO did not make provision for the possibility that Deborah might predecease Cingrani, the Fund based its decision on what it claimed was the default rule for QDROs, which it disclosed in a document attached to its denial letter. This default rule stated, *in haec verba,* "Upon the Alternate Payee's death before benefits commenced to him or her, the Alternate Payee's assigned benefit will be forfeited and will revert to the [Plan/Participant]." It did not explain the circumstances where one or the other would receive the reversion.

In response, on February 15, 2015, Cingrani obtained from the same court that issued the 2002 QDRO an amended QDRO. This

Order provided that "in the event the Alternate Payee [Deborah] should predecease the participant [Cingrani], and before any benefits were made to the Alternate Payee, all of the Alternate Payee's assigned benefit and rights thereto shall revert entirely to the Participant and the Participant shall therefore receive this full monthly retirement benefit and all other benefits afforded him."  On March 3, 2015 the Fund refused to honor the February 18, 2015 QDRO.  Cingrani appealed this denial pursuant to the Fund's rules, which was denied on May 4, 2015. The wording of the two denials was identical except the earlier denial was based on Cingrani's "claim" while the latter was based on his "appeal."  The appeal denial, however, did refer to the "discovery" of a "prior version" of the Fund's QDRO model form that did not provide a default rule.  The Fund concluded that even if there was no default rule, Cingrani still loses because Deborah received all the benefits to which she was entitled which was Zero.

On both the claim and the appeal the Fund was deadlocked with the Union Representative voting in favor of Cingrani and the Employer Representative voting in favor of the Fund's position.  Under the Fund's rules of procedure, the Fund's position is sustained unless it is overruled by both the Union Representative and the Employer Representative.  The reason for rejecting Cingrani's claim was that the QDRO was silent as to

what happens in the event of Deborah's death prior to Cingrani's retirement and the commencement of benefits, and the so-called "default rule" quoted above was applied to deny the claim; and that an amended QDRO cannot retroactively reverse a result that had already occurred, *i.e.,* the satisfaction of any claim Deborah had due to her death prior to Cingrani's retirement.

## II. DISCUSSION

The Union Representative and Cingrani take the position that Deborah died prior to her vesting in the pension which is proved by the fact that the fund claims that her share had no value at the time of her death because Cingrani had not yet retired. Thus, there is no basis for denying his claim for full benefits. Cingrani also claims that the 2015 QDRO effectively amended the 2002 QDRO when it eliminated any interest Deborah had.

Based on the above Cingrani filed a two-count Complaint against the Fund, Count I based on ERISA, and Count II based on violation of the Collective Bargaining Agreement. Cingrani has moved for Judgment on the pleading on Count I, contending that the Fund's denial of his full pension benefits was arbitrary and capricious and therefore violated ERISA. Rule 12(c) permits a party to move for judgment on the pleadings, which consist of the Complaint, the Answer and any written instruments attached to the Complaint as exhibits if it appears that the moving

party is entitled to judgment as a matter of law. *North Ind. Gun & Outdoor Shows, Inc. V, City of Southbend,* 163 F.3d 449, 452 (7th Cir. 1998).

"Where as here the plan administrator is granted discretion to construe plan terms, a reviewing court reviews the administrator's ruling under a deferential arbitrary or capricious standard of review." *Hess v. Reg-Ellen Machine Tool Corp.,* 423 F.3d 653 (7th Cir. 2005). The Court grants Cingrani's Motion for Judgment on the Pleadings because the Court finds that under the facts of this case the Plan Administrator's refusal to recognize the fact that Deborah's interest terminated on her death and reverted to Cingrani as required by the 2015 QDRO was arbitrary and capricious. It is obvious that where the QDRO is silent, and there is no default rule, and a beneficiary dies prior to her interest vesting, there is nothing to revert to the Fund. If the pension had, in fact, vested so that there was an interest that would be owned by her estate there would be a basis for denial of Cingrani's claim. But that is not the case. The Board specifically held that her "children do not (and did not) have a right to receive [Deborah's] benefits." The Fund's stated position is that even if it is unjustly enriched it has no authority to ignore the 2002 QDRO and apply provisions of the 2015 QDRO. But why no apply the 2015 QDRO even though it was entered after Deborah's

death? Courts have held that ERISA does not prohibit application of posthumous QDROs. *Marker v. Northrop Grumman Space & Missions Systems Corp. Salaried Pension Plan,* 2006 WL 2873191 (N.D, Ill. 2006) and cases cited at *9. *See also, Patton v. Denver Post Corp.,* 179 F.Supp.2d 1232, 1234 (Colo. D.C. 2001). In the *Patton* case, the first QDRO gave the participant's spouse, a one-half interest in one of the participant's pension plans. A second pension plan was overlooked and not included in the QDRO. After the Participant's death the second plan was discovered and its omission was believed to have been inadvertent. The spouse then filed a motion in domestic relations court for a second QDRO asking it to be entered *Nunc Pro Tunc* to the date of the divorce and eleven years prior to the participant's death. The employer refused to recognize the second QDRO and the subject suit was filed. The court found in favor of the spouse holding that such an order was valid under Colorado law in order to correct an error or omission, and it therefore must be recognized by the employer under ERISA law. Here, similarly, the omission to take into account the possibility that Deborah might predecease Cingrani appears to be an obvious oversight. It is inconceivable that Deborah would have opted to have fifty percent of Cingrani's pension revert to the Union Pension Plan in the event of her prior death. It is therefore well within

ERISA to allow a domestic relations court to correct such an omission.

The Court finds that Cingrani should win on two bases: first, the 2002 QDRO allows Deborah's interest to revert to Cingrani and, second, even if it does not, the 2015 QDRO was valid to accomplish the same purpose.

While ERISA does not allow the assignment or alienation of rights of beneficiaries and participants, there is an exception for QDROs from state courts. Such QDROS will override the terms of the plan if the statutory criteria are met. There are several formal requirements but the main substantive one is that the QDRO must not increase the benefits to be paid by the Plan if to do so would increase the actuarial cost. 29 U.S.C. § 1056(d)(3)(D)(ii). In other words, the QDRO cannot itself increase the cost of the pension. The issue is: does the death of an alternative payee prior to the institution of benefit payments increase the actuarial cost of the benefits. The cost in the first instance would depend on the age of the participant. After the QDRO assignment of 50% to Deborah, presumably the Fund would have recalculated the benefits based on the age of Deborah who was two years younger than Cingrani. A younger woman would presumably increase the cost of the pension unless the payments were somehow reduced because the life expectancy of women is longer than that of men. Thus, it

would seem that her premature death and the reassignment of her interest back to Cingrani would not have caused the actuarial cost of the pension to increase but quite possibly decrease. The Fund does not suggest that it would increase the cost. Thus, it would appear that the recognition of the 2015 posthumous QDRO would fall well within the statutory criteria to allow a QDRO to override the ERISA plan. *Blue v. UAL Corporation,* 160 F.3d 383, 385-386 (7th Cir. 1998).

### III. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Judgment on the Pleadings [ECF No. 12] is granted.

**IT IS SO ORDERED.**

                                    Harry D. Leinenweber, Judge
                                    United States District Court

Dated: 12/15/2015